NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JOHN M. MCHUGH, SECRETARY OF THE ARMY,**
*Appellant*

**v.**

**KELLOGG BROWN & ROOT SERVICES, INC.,**
*Appellee*

---

2015-1053

---

Appeal from the Armed Services Board of Contract Appeals in Nos. 56358, 57151, 57327, 58559, Administrative Judge Mark N. Stempler, Administrative Judge Monroe E. Freeman, Jr., Administrative Judge Richard Shackleford.

---

Decided: September 15, 2015

---

JONATHAN REID PROUTY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellant. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR.

JASON NICHOLAS WORKMASTER, Covington & Burling LLP, Washington, DC, argued for appellee. Also repre-

sented by RAYMOND B. BIAGINI, HERBERT L. FENSTER, DANIEL L. RUSSELL, JR., ALEJANDRO LUIS SARRIA, JOHN W. SORRENTI.

_____

Before PROST, *Chief Judge,* LOURIE and BRYSON, *Circuit Judges.*

PROST, *Chief Judge.*

The Secretary of the Army ("Army") appeals from a final decision of the Armed Services Board of Contract Appeals ("Board") in favor of Kellogg, Brown & Root Services, Inc. ("KBR"). The Board ruled in favor of KBR, finding that the contract between the Army and KBR did not preclude the use of armed subcontractors and that the Army contracting officer's additional claim against KBR in 2013 was barred by the statute of limitations. *Kellogg Brown & Root Servs., Inc.*, Contract No. DAAA09-02-D-0007, ASBCA Nos. 56358, 57151, 57327, and 58559, 14-1 BCA ¶ 35,639, 2014 WL 2931488 (June 17, 2014) ("*Board Decision*"). We affirm the Board's conclusion on the statute of limitations. On the contract interpretation issue, however, KBR focuses on its contention that the Army breached its force protection obligations under the contract, which the Board did not rule on and is the subject of a separate case pending before the Board. Limited to the narrow contract interpretation issue now before us, we agree with the Army. We therefore affirm in part, reverse in part, vacate in part, and remand.

## BACKGROUND

The Army contracted with KBR on December 4, 2001 to provide dining facilities services in the Iraq war under Contract 0007 in the U.S. Army's Logistics Civil Augmentation Program or the LOGCAP III contract. Some of KBR's subcontractors hired armed escorts by Private Security Contractors ("PSCs") in response to deteriorating security conditions and an alleged inability to obtain force

protection from the Army. The use of these PSCs under the LOGCAP III contract was not authorized by the Army. Some of KBR's subcontractors charged their PSC costs incurred from 2003 to 2006 to KBR, which in turn passed on the costs to the Army. The Army paid those PSC costs.

In late 2006, however, the Army started to question KBR about the use of PSCs. Between 2007 and 2010, the Army withheld three payments to KBR for PSC costs previously paid by the Army. The three withheld payments totaled over $44 million. KBR submitted a certified claim to the Army's contracting officer for each of the withheld payments under the Contract Disputes Act of 1978 ("CDA"). The contracting officer failed to respond within sixty days of receiving the respective claims for withheld payments and the claims were deemed denied; the associated appeals to the Board were docketed as ASBCA Nos. 56358, 57151, and 57327. On January 30, 2013, the Army's contracting officer issued a final decision demanding from KBR an additional amount of nearly $12 million for disallowed PSC costs. KBR appealed this decision and it was docketed as ASBCA No. 58559.

The Board consolidated the four cases for hearing. Shortly before trial for the four consolidated cases, KBR moved to consolidate an additional case, ASBCA No. 58583, in which it alleged that the Army breached its contractual obligation to provide adequate force protection. The Board denied KBR's motion. It agreed with the Army's argument that the Army would be prejudiced if KBR were allowed to raise its new breach theory at the trial of the four consolidated cases. The Board proceeded with the hearings on the four consolidated cases and issued a decision on June 17, 2014 in favor of KBR. The Board dismissed the Army's affirmative claim for nearly $12 million in ASBCA No. 58559 because the Army's contracting officer asserted the claim on January 30, 2013, beyond the six-year statute of limitations under the

CDA. The Board then rejected the Army's contention that the terms of the contract did not allow for the use of PSCs and ordered the Army to pay the withheld $44 million at issue in ASBCA Nos. 56358, 57151, and 57327.

The Army timely appealed to this court. We have jurisdiction under 28 U.S.C. § 1295(a)(10) and 41 U.S.C. § 7107(a)(1).

## DISCUSSION

Under the CDA, 41 U.S.C. §§ 7101–7109, we review the Board's decisions on questions of law de novo. *Sharp Elecs. Corp. v. McHugh*, 707 F.3d 1367, 1371 (Fed. Cir. 2013). Contract interpretation is a question of law. *Teg-Paradigm Envtl., Inc. v. United States*, 465 F.3d 1329, 1336 (Fed. Cir. 2006). Factual findings shall be set aside if "the decision is (A) fraudulent, (B) arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or (C) not supported by substantial evidence." 41 U.S.C. § 7107(b)(2); *Ingalls Shipbuilding, Inc. v. O'Keefe*, 986 F.2d 486, 488-89 (Fed. Cir. 1993).

The Army raises two issues on appeal. First, the Army argues that the contract prohibited the use of PSCs and therefore KBR was not entitled to payment for the use of PSCs. Second, the Army argues that the Army's affirmative demand against KBR on January 30, 2013 was not barred by the CDA's six-year statute of limitation. We address each issue in turn.

## I. Contract Interpretation

The Army's theory is that the contract prohibited the use of PSCs because "PSCs, by definition, consist of armed subcontractor employees," and the contract prohibited the arming of such employees. Reply Br. 3. The Army cites Clause H-21 of the contract for prohibiting the use of personally owned firearms by contractor personnel. The Army also cites Clause H-13 of the contract for requiring that all personnel hired by or for the contractor shall

comply with all applicable guidance, instructions, and general orders, thus further incorporating Army regulations that prohibited the use of armed civilian personnel. The regulations relied upon by the Army include CENTCOM General Order No. 1A, Army Regulation 715-9, entitled "Contractors Accompanying the Force," and the Army's "Contractors on the Battlefield" field manual. Based on the Army Regulation and the field manual, the Army further explains that arming contractor personnel could jeopardize their status as civilians.

KBR does not dispute that the contract prohibited the arming of employees of KBR and its food services subcontractors. Rather, KBR implies that the contract's weapons prohibition did not apply to the PSCs, arguing that "[n]ot a single one of the provisions upon which the Government relies, however, even remotely alludes to the hiring or use of PSCs" and that there was a "material difference between arming individual contractor employees and retaining a professional private armed security company having its own employees, arms and ammunition." Appellee's Br. 34–35 (internal quotation marks omitted).

KBR's arguments simply mirror the Board's reasoning. The Board's opinion rested on the central premise that the contract and applicable regulations lacked explicit and specific prohibition against the use of PSCs. The Board reasoned that the relevant contract provision addressed only individual employee's access to firearms for self-defense, but did not address the use of armed private security companies. The Board similarly interpreted the weapons prohibition in CENTCOM General Order No. 1A as a code of personal conduct not relevant to the question of using armed private security contractors. The Board did not address Army Regulation 715-9 and the Army's "Contractors on the Battlefield" field manual that the Army cites on appeal.

KBR and the Board are correct that the contract and the applicable Army regulations did not specifically mention Private Security Contractors or PSCs. But a lack of specific reference to PSCs does not mean that KBR and its subcontractors were free to hire PSCs with civilian personnel carrying privately-owned weapons. Under KBR's theory, the contract and Army regulations prohibited, for example, truck drivers and other food services subcontractor employees from carrying their own rifles in the delivery trucks. But according to KBR, the contract and Army regulations permitted KBR's food services subcontractors to subcontract further for the services of PSCs, employing civilians carrying privately-owned weapons to protect the delivery trucks. KBR contends without explanation that there was a "material difference" in the weapons prohibition as applied to employees' self-protection and the hiring of other civilians for protection. Appellee's Br. 35.

We are not persuaded that KBR's alleged "material difference" existed. We discern no support in the contract or the applicable Army regulations to place KBR and its direct (food services) subcontractors on one side of the weapons prohibition and secondary (security) subcontractors on the other. There is no question that the PSCs' personnel were civilians carrying nongovernment-issued weapons. Army regulations such as CENTCOM General Order No. 1A prohibited such civilian personnel from the possession or use of privately owned firearms, ammunition and explosives. *E.g.*, J.A. 550. This longstanding Army policy was incorporated into the LOGCAP III contract by clauses H-13 and H-19.

We therefore interpret the contract's weapons prohibition to apply equally to the employees of KBR and its food services subcontractors, as well as to the personnel of the security subcontractors engaged for the LOGCAP III contract. Because the contract prohibited contractors' and subcontractors' employees from carrying nongovernment-

issued weapons, we conclude that the use of armed PSCs fell outside the scope of the LOGCAP III contract. We therefore reverse the Board's conclusion that the LOGCAP III contract allowed the use of PSCs.

This narrow contract interpretation based on the weapons prohibition, however, may not fully resolve the dispute between the parties. KBR argues that we could alternatively affirm the Board based on its "holding that the use of PSCs was an allowable 'remedy' for the Government's breach of its contractual obligation to provide adequate force protection." Appellee's Br. 21. A threshold question for us is whether these breach and remedy issues are properly before us on appeal. We note that the Board's opinion made several findings of fact that appear favorable to KBR concerning its allegations of the Army's prior breach of contract and of using PSCs as an allowable remedy. But we do not read the Board's opinion as reaching any ultimate legal conclusion on these issues.

Indeed, even KBR conceded during oral argument that there is some vagueness in the Board's opinion on whether the Board ruled on the breach and remedy issues. Oral Arg. at 19:35–23:10, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/15-1053/all. We therefore remand ASBCA Nos. 56358, 57151, and 57327 to the Board to decide in the first instance whether KBR properly raised its breach and remedy allegations, and if so, to rule on those contentions.[1]

## II. Statute of Limitations

The Board also dismissed the Army's affirmative claim for nearly $12 million in ASBCA No. 58559 because

---

[1] We have also considered KBR's contentions that we could affirm the Board's conclusions in favor of KBR on additional alternative grounds. We do not find any of those purported alternative grounds persuasive.

the Army's contracting officer asserted the claim on January 30, 2013, more than six years after the claim accrued on June 10, 2005. *See* 41 U.S.C. § 7103(a)(4)(A). The Board found that on June 10, 2005, an Army contracting officer consented to a food services subcontract document submitted by KBR in which the pricing justification expressly included the statement that the subcontractor was "using the services of a professional security company to transport" the food services personnel to their respective sites. *Board Decision* at ¶ 60 (quoting J.A. 5550).

The Army argues that the Board erred because the statute of limitations did not start when the Army knew or should have known of the use of PSCs. The operative marker, according to the Army, should be when it knew or should have known that KBR would be seeking reimbursement from the Army for the use of PSCs.

Even if we accept the Army's contention on the proper event to start the statute of limitations period, the Army still loses on this issue. The June 10, 2005 KBR document cited by the Board was entitled "REQUEST FOR CREDIT" that was submitted to and approved by the Army. J.A. 5544. This June 10, 2005 credit request included correspondence from a KBR subcontractor to KBR that explicitly justified a price increase for: "Security: Private companies are contracted to escort personnel to and from sites. In addition, when military convoys are not available, we use private security companies." J.A. 5550.

The Army's only challenges to the June 10, 2005 credit request are that the document did not explicitly state KBR's intent to seek payment for the PSC costs and that there was no witness testimony about this credit request. But the Army offers no explanation why a credit request attaching a subcontractor's justification for a price increase based on the use of PSCs should not have put the

Army on notice that it would be paying for the use of PSCs. Because of the specificity of the information in the June 10, 2005 credit request, we are not persuaded by the Army's arguments. We therefore conclude that KBR's June 10, 2005 credit request provided substantial evidence to support the Board's finding that the statute of limitations period began by June 10, 2005. We therefore affirm the Board's dismissal of ASBCA No. 58559 because the Army asserted the claim more than six years after it accrued.

**AFFIRMED-IN-PART, REVERSED-IN-PART, VACATED-IN-PART and REMANDED**

COSTS

Each party shall bear its own costs.