# United States Court of Appeals for the Federal Circuit

———————————

**SECURIFORCE INTERNATIONAL AMERICA, LLC,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Cross-Appellant*

———————————

2016-2589, 2016-2633

———————————

Appeals from the United States Court of Federal Claims in No. 1:12-cv-00759-MBH, Judge Marian Blank Horn.

———————————

Decided: January 17, 2018

———————————

FREDERICK W. CLAYBROOK, JR., Claybrook LLC, Washington, DC, argued for plaintiff-appellant. Also represented by BRIAN TULLY MCLAUGHLIN, Crowell & Moring, LLP, Washington, DC; ROBERT JOHN WAGMAN, JR., Bracewell LLP, Washington, DC.

PATRICIA M. MCCARTHY, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-cross-appellant. Also represented by CHAD A. READLER, ROBERT E. KIRSCHMAN, JR., RUSSELL JAMES UPTON, JEFFREY

LOWRY; JILL BUCHOLZ RODRIGUEZ, Defense Logistics Agency, Ft. Belvoir, VA.

————————————

Before DYK, O'MALLEY, and WALLACH, *Circuit Judges*.

DYK, *Circuit Judge*.

Securiforce International America, LLC ("Securiforce"), a government contractor, filed suit in the Court of Federal Claims ("Claims Court") under the Tucker Act, 28 U.S.C. § 1491, and the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §§ 7101-09. It sought a declaration that its contract for fuel delivery was improperly terminated by the Defense Logistics Agency ("DLA" or the "government")—in part for the government's convenience and in part for default. The Claims Court held that the CDA provided it with jurisdiction over both terminations; that the termination for convenience was improper; and that the termination for default was proper. *Securiforce Int'l Am., LLC v. United States* (*Securiforce I*), 125 Fed. Cl. 749 (2016). The Claims Court also denied Securiforce's posttrial sanctions motions. *Securiforce Int'l Am., LLC v. United States* (*Securiforce II*), 127 Fed. Cl. 386 (2016).

We affirm the Claims Court's determinations except its determination that it had jurisdiction to adjudicate an affirmative, declaratory claim with respect to the termination for convenience; on that one issue, we vacate the judgment of the Claims Court and remand with directions to dismiss.

BACKGROUND

In September 2011, Securiforce entered into a requirements contract with the government to deliver fuel to eight sites in Iraq. Shortly after the contract was executed, on September 26, the government terminated the contract for convenience with respect to two of the

eight sites (the "termination for convenience"). Because Securiforce intended to supply fuel from Kuwait, the government concluded that delivery to those two sites without an appropriate waiver would have violated the Trade Agreements Act of 1979 ("TAA"), 19 U.S.C. §§ 2501-81, and that obtaining a waiver would have taken too long.

Thereafter, in mid-October, the government placed oral orders for small deliveries to two of the remaining sites, the deliveries to occur by October 24. In the weeks that followed, however, Securiforce informed the government that it would not be able to deliver until, first, early and, then, late November. Losing confidence that Securiforce would be able to make the deliveries, the government sent Securiforce notice that it should offer justifiable excuses for its delays or risk a termination for default. Securiforce responded, contending that various government breaches excused the late deliveries, including the allegedly improper termination for convenience, the failure to provide required security escorts, the small size of the orders, and other alleged irregularities attributable to the government. Unpersuaded, the government terminated the remainder of the contract for default on November 15 (the "termination for default").

Securiforce filed its initial complaint in the Claims Court the following year, on November 6, 2012, requesting declaratory relief that the termination for default was improper. On November 16, Securiforce sent the government a letter requesting a final decision by the contracting officer ("CO") that the termination for convenience was improper. On January 16, 2013, the CO denied Securiforce's request because it did not seek damages in a sum certain, and on January 23 Securiforce amended its complaint in the Claims Court to include an additional request for declaratory judgment that the termination for convenience was improper.

Following a bench trial, the Claims Court issued its findings of fact and conclusions of law. *Securiforce I*, 125 Fed. Cl. 749. The court found that it had jurisdiction to review Securiforce's claims concerning both the termination for convenience, *id.* at 764-81, and the termination for default, *id.* at 788. Reaching the merits of the termination-for-convenience claim, the court found the CO abused her discretion in partially terminating the contract for convenience and, in doing so, breached the government's contract with Securiforce. *Id.* at 781-87. The court then found the termination for default proper, rejecting Securiforce's claim that its nonperformance could be excused by the government's actions, *id.* at 787-99, and explaining that Securiforce's failure to perform "was a product of its own making," because it had failed to make proper and timely arrangements to acquire and deliver fuel, *id.* at 793. In a follow-up opinion, the court denied Securiforce's posttrial sanctions motions. *Securiforce II*, 127 Fed. Cl. 386.

Securiforce timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

We review the legal conclusions of the Claims Court de novo and its findings of fact for clear error. *Rasmuson v. United States*, 807 F.3d 1343, 1345 (Fed. Cir. 2015).

I

A

We first consider whether the Claims Court had subject-matter jurisdiction to review the termination for convenience. "Whether the Court of Federal Claims had jurisdiction under the CDA is a question of law we decide de novo," *K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1004 (Fed. Cir. 2015), but "we review the trial court's findings of fact relating to jurisdictional issues for clear error," *John R. Sand & Gravel Co. v. United States*,

457 F.3d 1345, 1353 (Fed. Cir. 2006), *aff'd*, 552 U.S. 130 (2008). The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Brandt v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013).

"A prerequisite for jurisdiction of the Court of Federal Claims over a CDA claim is a *final decision* by a contracting officer on a *valid claim*." *Northrop Grumman Computing Sys., Inc. v. United States*, 709 F.3d 1107, 1111-12 (Fed. Cir. 2013); *see also* 28 U.S.C. § 1491(a)(2); 41 U.S.C. § 7104(b)(1). Because the CDA does not define "claim," we look to the Federal Acquisition Regulation ("FAR"), which defines a claim as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to th[e] contract." FAR 52.233-1(c); *see also* J.A. 789 (incorporating this clause into Securiforce's contract). We have explained that for monetary claims, the absence of a sum certain is "fatal to jurisdiction under the CDA." *Northrop*, 709 F.3d at 1112; *accord M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327-29 (Fed. Cir. 2010). Relatedly, "once a claim is in litigation, the contracting officer may not rule on it—even if the claim . . . was not properly submitted to and denied by the contracting officer before it was placed in litigation." *K-Con*, 778 F.3d at 1005.

The government offers two alternative arguments against the Claims Court's jurisdiction, both based on Securiforce's purported failure to obtain a final decision from the CO before bringing its claim into court. First, the government contends that the filing of Securiforce's initial complaint in the Claims Court ousted the CO of authority to decide the claim presented in Securiforce's subsequent letter. Second, the government argues that even if the CO had authority to decide the claim, Securiforce failed to state a sum certain in its letter to the CO,

as required by the CDA. Because we agree with the government on the second of these points, we need not reach the first.

As noted above, Securiforce submitted a letter to the CO concerning the termination for convenience on November 16, 2012, ten days after it filed its initial complaint in the Claims Court. Securiforce's letter to the CO did not state a sum certain but rather purported to seek only a declaration that the termination for convenience constituted a material breach of the contract. The Claims Court determined that it had jurisdiction because this "letter constituted a valid claim to the contracting officer for non-monetary relief." *Securiforce I*, 125 Fed. Cl. at 775. We disagree.

While contractors may in some circumstances properly seek only declaratory relief without stating a sum certain, they may not circumvent the general rule requiring a sum certain by reframing monetary claims as nonmonetary. In a related context, we have been careful to recognize this distinction. The Administrative Procedure Act ("APA") provides a cause of action for nonmonetary claims against the government, 5 U.S.C. § 702, so long as "there is no other adequate remedy in a court," *id.* § 704. The Tucker Act, however, provides exclusive jurisdiction in the Claims Court for monetary claims exceeding $10,000. *See* 28 U.S.C. §§ 1346(a)(2), 1491(a)(1). The question in many of our prior cases, then, has been whether a given claim is properly classified as monetary or nonmonetary. We and other courts of appeals have consistently held that litigants may not avoid the Claims Court's exclusive jurisdiction by dressing up monetary claims in other courts as requests for nonmonetary, declaratory relief under the APA. *Doe v. United States*, 372 F.3d 1308, 1313 (Fed. Cir. 2004) (collecting cases).

In making this determination, "we customarily look to the substance of the pleadings rather than their form."

*Brazos Elec. Power Coop., Inc. v. United States*, 144 F.3d 784, 787 (Fed. Cir. 1998). If "the only significant consequence" of the declaratory relief sought "would be that [the plaintiff] would obtain monetary damages from the federal government," the claim is in essence a monetary one. *Id.* We see no reason to depart from this principle here, when determining whether a claim is monetary or nonmonetary for purposes of CDA jurisdiction.

Securiforce's claim concerning the termination for convenience, although styled as one for declaratory relief, would—if granted—yield only one significant consequence: it would entitle Securiforce to recover money damages from the government. This is confirmed by Securiforce's own letter, which asked the CO to decide whether "Securiforce is entitled to breach damages," without specifying an amount. J.A. 139. Indeed, following the Claims Court's ruling, Securiforce sent an additional letter to the CO, for the first time quantifying its damages as $47 million. Securiforce's failure to present this sum certain to the CO in its November 2012 letter rendered its claim insufficient. The Claims Court erred in finding that, "notwithstanding [the government]'s argument that [Securiforce]'s claim is monetary, the evidence . . . indicates that [Securiforce's letter to the CO] was a claim for non-monetary relief." *Securiforce*, 125 Fed. Cl. at 770; *see also John R. Sand*, 457 F.3d at 1353. Therefore, based on these errors, the Claims Court was without jurisdiction to entertain Securiforce's declaratory-judgment claim with respect to the termination for convenience.

Securiforce argues that this result is inconsistent with the text of the Tucker Act, which provides jurisdiction over "a dispute concerning termination of a contract . . . and other nonmonetary disputes on which a decision of the contracting officer has been issued." 28 U.S.C. § 1491(a)(2). This language was added by amendment in 1992 in order to ensure Claims Court jurisdiction over

some nonmonetary disputes. *See, e.g.*, *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1268-70 (Fed. Cir. 1999); *Garrett v. Gen. Elec. Co.*, 987 F.2d 747, 750 (Fed. Cir. 1993) (citing Federal Courts Administration Act of 1992, Pub. L. No. 102-572, sec. 907(b)(1), § 1491(a)(2), 106 Stat. 4506, 4519). However, this jurisdictional amendment did not relieve parties' obligation to comply with the separate requirements of the CDA, including the statement of a sum certain where, as here, the party is in essence seeking monetary relief. Having failed to comply with those requirements, Securiforce could not invoke the Claims Court's jurisdiction over its affirmative termination-for-convenience claim.

Even if Securiforce's claim were properly characterized as nonmonetary, the Claims Court could not properly exercise jurisdiction over an affirmative declaratory-judgment claim that the government breached the contract by terminating for convenience. While declaratory judgments are not precluded from the Claims Court's CDA jurisdiction, it is not always appropriate for the Claims Court to consider them. *See Alliant*, 178 F.3d at 1271. Indeed, the Claims Court has "discretion to grant declaratory relief only in limited circumstances" during contract performance, including when there is "a fundamental question of contract interpretation or a special need for early resolution of a legal issue." *Id.*; *see also Tiger Nat. Gas, Inc. v. United States*, 61 Fed. Cl. 287, 292 (2004) ("The Federal Circuit added that the legislative history of the 1992 amendments to the Tucker Act did not justify precluding a contractor from seeking a declaratory judgment for an ongoing performance issue."). In those narrow circumstances, the court "is free to consider the appropriateness of declaratory relief, including whether the claim involves a live dispute between the parties, whether a declaration will resolve that dispute, and whether the legal remedies available to the parties would

be adequate to protect the parties' interests." *Alliant*, 178 F.3d at 1271.

This case epitomizes a circumstance where "the legal remedies . . . would be adequate to protect [Securiforce's] interests." *Id.* Unlike prior cases where we have determined that the Claims Court had jurisdiction over requests for declaratory judgments, *see, e.g.*, *Todd Constr.*, 656 F.3d at 1308-11; *Alliant*, 178 F.3d at 1271-72, Securiforce seeks a declaration that the government materially breached the contract, J.A. 134, 139. However, "damages are always the default remedy for breach of contract." *United States v. Winstar Corp.*, 518 U.S. 839, 885 (1996) (plurality op.). A contractor's request for a declaratory judgment that the government materially breached a contract by terminating for convenience thus would violate "the traditional rule that courts will not grant equitable relief when money damages are adequate." *Alliant*, 178 F.3d at 1271.

Therefore, we conclude that the Claims Court erred in adjudicating Securiforce's convenience-termination claim.

B

Although we find the Claims Court lacked jurisdiction over the declaratory-judgment claim concerning the termination for convenience, the question remains whether it could review that termination as a defense to the termination for default. In this respect, the Claims Court held that the termination was improper but that the improper convenience termination provided no defense to the default termination. *Securiforce I*, 125 Fed. Cl. at 781-88. Securiforce contends that the improper convenience termination was a prior material breach, excusing Securiforce's later failure to perform. *See, e.g.*, *Laguna Constr. Co. v. Carter*, 828 F.3d 1364, 1369 (Fed. Cir. 2016) (describing the common-law defense of prior material breach). The government argues that this defense (like the affirmative declaratory-judgment claim) could not be

asserted in the Claims Court without first being presented to the CO for a final decision. For support, the government relies on our prior cases *Maropakis*, 609 F.3d 1323, and *Raytheon Co. v. United States*, 747 F.3d 1341 (Fed. Cir. 2014).

In *Maropakis*, the contractor claimed that its contract should have been modified by extending certain deadlines and that this constituted an affirmative defense to the government's liquidated-damages claim. 609 F.3d at 1327-32. We held that the CDA's jurisdictional prerequisite—i.e., that the parties first present their claims to a CO for a final decision—applied to the contractor's affirmative defense. *Id.* at 1329-32. "Thus, we h[e]ld that a contractor seeking an adjustment of contract terms must meet the jurisdictional requirements and procedural prerequisites of the CDA, whether asserting the claim against the government as an affirmative claim or as a defense to a government action." *Id.* at 1331. Similarly, in *Raytheon*, the government claimed an equitable adjustment as a defense to a contractor's monetary claim. *See* 747 F.3d at 1353-55. We reiterated that the presentation prerequisite "applies even when a claim is asserted as a defense." *Id.* at 1354. *Raytheon* did not hold or suggest that the presentation requirement applies to all defenses, and in *Laguna*, decided after *Maropakis* and *Raytheon*, we explained that the rule articulated in those cases only applies when the defenses "seek the payment of money or the adjustment or interpretation of contract terms." 828 F.3d at 1368. A broader rule, the *Laguna* court explained, "would unnecessarily expand the definition of a 'claim' and could improperly bar . . . jurisdiction where the government raises *any* affirmative defense." 828 F.3d at 1368. Accordingly, *Laguna* found jurisdiction over an affirmative defense of fraud even though it had not been presented to a CO. *Id.* at 1368-69.

Under *Laguna*, if a party raises an affirmative defense under the contract as written—for example, com-

mon-law defenses of fraud or prior material breach—it need not first be presented to the CO for a final decision, since a defense is not a claim for money, and the CO has no necessary role in assessing the defense. In contrast, under *Maropakis* and *Raytheon*, to the extent the affirmative defense seeks a change in the terms of the contract—for example, an extension of time or an equitable adjustment—it must be presented to the CO, since evaluation of the action by the CO is a necessary predicate to a judicial decision.

In this case, Securiforce asserts a common-law affirmative defense of prior material breach under the contract as written. It neither seeks the payment of money, nor is a decision by the CO a necessary prerequisite. Securiforce need not, therefore, have presented that defense to the CO in order to later assert it in the Claims Court. Indeed, in *Malone v. United States*, 849 F.2d 1441, 1445-46 (Fed. Cir.), *modified on other grounds*, 857 F.2d 787 (Fed. Cir. 1988), we assumed that a defense of prior material breach did not need to be presented to the CO.

## II

Having concluded that the Claims Court had jurisdiction over Securiforce's prior material breach defenses, including the improper termination for convenience defense, we consider whether these alleged prior material breaches provide a defense to the default termination such that the default termination was improper. Aside from these alleged prior breaches, Securiforce does not challenge on appeal the Claims Court's determination that it failed to perform and to "provide adequate assurances of future performance." *Securiforce I*, 125 Fed. Cl. at 790.

The government concedes that the Claims Court had jurisdiction to review the termination for default even though there was no government monetary claim. We have long held that a termination for default is a govern-

ment claim not subject to CO presentment under the CDA. *See Alliant*, 178 F.3d at 1268; *Malone*, 849 F.2d at 1443.

A

We first address whether the government breached the contract by partially terminating it for convenience. For contracts for the sale of commercial items, the FAR provides: "The Government reserves the right to terminate this contract, or any part thereof, for its sole convenience." FAR 52.212-4(l). This clause and its language were incorporated into the Securiforce contract. J.A. 743, 791. The regulations also describe the CO's authority to exercise this clause: "The contracting officer shall terminate contracts, whether for default or convenience, only when it is in the Government's interest." FAR 49.101(b).

We review terminations for convenience for "bad faith or clear abuse of discretion." *T & M Distribs., Inc. v. United States*, 185 F.3d 1279, 1283 (Fed. Cir. 1999). Securiforce did not allege bad faith on the part of the government, and the Claims Court could discern none from the evidence. *See Securiforce I*, 125 Fed. Cl. at 784-85. On appeal, Securiforce presses only its allegations that the convenience termination was an abuse of discretion.

Because the testimony revealed that the CO did not herself make the decision to terminate the contract for convenience, the Claims Court determined that the CO "abdicated her duty to exercise her own independent business judgment" and, therefore, "the partial termination for convenience was an improper abuse of discretion." *Securiforce I*, 125 Fed. Cl. at 787. The cases on which the Claims Court relied to render this conclusion are distinguishable in that each involved contractual language that entitled the contractor to the resolution of factual disputes by a particular official. In *New York Shipbuilding Corp. v. United States*, 385 F.2d 427 (Ct. Cl. 1967), the Court of

Claims determined that where a contract specified that factual disputes "shall be decided by the Nuclear Projects Officer of the Maritime Administration," *id.* at 429, the contractor was entitled to a resolution by that particular officer, *id.* at 433-35. "The contractor, in particular, bargained for the Nuclear Projects Officer as the first tribunal to determine controversies," but a different official rendered the final decision, contrary to the contract's terms. *Id.* at 434. In *Pacific Architects & Engineers Inc. v. United States*, 491 F.2d 734, 744 (Ct. Cl. 1974) (per curiam), the contract similarly provided for the resolution of factual disputes "by the Contracting Officer." The CO in that case had reached his decision after accepting the advice of legal counsel. *Id.* at 745. The Court of Claims construed the contract's provision to require that the CO make the ultimate determination but noted that "there was no implied prohibition against [the CO's] first obtaining or even agreeing with the views of others." *Id.* at 744.

Securiforce's contract required only that "[t]he Government" make the termination decision. Our cases interpreting similarly worded clauses in the default context do not require a decision by a particular official but only a reasonable conclusion that there was no reasonable likelihood the contractor would perform within the time remaining. *Empire Energy Mgmt. Sys., Inc. v. Roche*, 362 F.3d 1343, 1345 n.2, 1357 (Fed. Cir. 2004); *McDonnell Douglas Corp. v. United States*, 323 F.3d 1006, 1014, 1016 (Fed. Cir. 2003). We conclude that the Claims Court erred in holding that the decision to terminate for convenience was invalid because it was not reached independently by the CO.

Securiforce argues in the alternative that the termination for convenience was an abuse of discretion by the government. We find no abuse of discretion.

The TAA permits the acquisition of certain supplies only from a list of designated countries but allows the waiver of this restriction when in the national interest. *See* 19 U.S.C. § 2512(b)(2); FAR 225.403(c)(ii). Such a waiver must generally be obtained from the United States Trade Representative ("USTR"). *See, e.g.*, 19 U.S.C. § 2512(b)(1); Exec. Order No. 12,260, § 1-201, 46 Fed. Reg. 1653, 1653 (Dec. 31, 1980). But where the purchase is for "fuel for use by U.S. forces overseas," the Department of Defense ("Defense") may issue a national-interest waiver on its own. FAR 225.403(c)(ii)(B). Securiforce planned to source its fuel from Kuwait, which is not a designated country for TAA purposes. *See, e.g.*, FAR 52.225-5.

The contract was awarded to Securiforce on September 7, 2011. The government was aware at that time that it would need a national-interest waiver for Securiforce under the TAA. At the time the contract was awarded, DLA believed it was within the authority of Defense to execute such a waiver given the presence of U.S. forces at the sites in Iraq.

In the day following the award, counsel for DLA discovered that because the sites awarded to Securiforce were staffed exclusively with Department of State ("State") personnel, Defense lacked the authority to issue the waiver for those sites, which would instead need to be obtained from the USTR. While the government was determining how to proceed, Securiforce countersigned the contract on September 9. Between September 9 and 12, additional research revealed that Defense personnel would be present at six of the eight sites, and as a result, Defense could and ultimately did waive the TAA for those six sites.[1]

---

[1]    Securiforce points to the testimony of two witnesses suggesting that there were Defense personnel at

At this point, two sites required a USTR waiver. Ultimately, the government concluded that a USTR waiver could take four to six weeks and that obtaining such a waiver could cause significant delay to fuel deliveries in the war zone. The government decided that it was in its interest to terminate the contract with respect to those two sites, which it did by issuing unilateral Modification P00001. It was entirely reasonable—and no abuse of discretion—for the government to decide that this approach was in its best interests.

Securiforce argues that the government was under an obligation to seek the USTR waiver as part of its "duty to facilitate Securiforce's performance," Appellant Reply Br. 29, citing our decision in *Rockies Express Pipeline LLC v. Salazar*, 730 F.3d 1330 (Fed. Cir. 2013). In *Rockies*, we determined that the government breached a contract by not seeking to deviate from certain provisions in the FAR—as it had promised in the contract to do—yet continuing to demand performance by the contractor. *Id.* at 1334-35, 1338-39. The government in that case did not terminate for convenience, and we did not decide whether that would have been appropriate. In particular, *Rockies* did not speak to whether the government could invoke termination for convenience in order to avoid the very kind of dispute raised by the parties in that case. Here, we hold that the government was entitled to terminate the contract for convenience in light of both the contract's

---

the other two sites and that the Defense waiver was therefore effective as to those sites, as well. The Claims Court credited other witnesses' testimony to the contrary, *Securiforce I*, 125 Fed. Cl. at 756, and given this conflicting testimony, the Claims Court's factual finding was not clearly erroneous, *e.g.*, *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985).

conflict with the TAA and the possibility that seeking a waiver would cause unacceptable delay.

Securiforce also disputes the timing of the government's decision, pointing to testimony that suggests the government decided to terminate the contract before it was even executed. Securiforce contends that this constitutes a breach under *Torncello v. United States*, 681 F.2d 756 (Ct. Cl. 1982) (en banc) (plurality op.). As interpreted by the later decisions of this court, *Torncello* "stands for the unremarkable proposition that when the government contracts with a party knowing full well that it will not honor the contract, it cannot avoid a breach claim by adverting to the convenience termination clause." *Salsbury Indus. v. United States*, 905 F.2d 1518, 1521 (Fed. Cir. 1990).

After reviewing the trial evidence, the Claims Court concluded that "although the record indicates that DLA Energy was aware of the TAA waiver issue with regard to the two [State] sites by September 8, 2011, it is also clear that defendant had not reached a conclusion on how it would resolve the issue before both parties executed the contract on September 9, 2011." *Securiforce I*, 125 Fed. Cl. at 787 n.9; *accord id.* at 756. The Claims Court therefore determined that there had been no *Torncello* breach. *Id.* at 787 n.9. Although Securiforce has pointed to conflicting evidence on this point, the Claims Court's factual finding was not clearly erroneous. *E.g.*, *Anderson*, 470 U.S. at 575. We conclude that the government did not breach the contract by terminating for convenience. We need not reach the question whether a breach, had it occurred, would have excused Securiforce's default.

B

Securiforce also contends that the government's failure to provide security escorts for the fuel deliveries was a prior material breach. Since virtually the moment the contract was signed, the parties disputed what, if any,

security the government was required to provide. On October 13, 2011, the parties executed the bilateral Modification P00002 ("Mod. 2"). Mod. 2 added language to the contract requiring the government to provide security escorts to each of the six remaining sites. This provision expressly stated that it would expire and that "U.S. Government escorts will no longer be provided after December 31, 2011 for all line items in the contract." J.A. 1086.

Securiforce contends that the government then breached Mod. 2 when on October 24, 2011, the supervisory CO sent an email to Securiforce, informing it that "[m]ilitary provided security . . . w[ould] no longer be provided" to four of the six remaining sites and that "DLA Energy [wa]s working towards a solution to line Securiforce with a [State] task order for security but this has not been finalized as of the writing of this email." J.A. 1228. "More to come," the email concluded. *Id.*

Securiforce contends that this email was an anticipatory repudiation of the government's obligations under Mod. 2. Anticipatory repudiation requires

> reasonable grounds [to] support the obligee's belief that the obligor will breach the contract. In that setting, the obligee "may demand adequate assurance of due performance" and if the obligor does not give such assurances, the obligee may treat the failure to do so as a repudiation of the contract.

*Danzig v. AEC Corp.*, 224 F.3d 1333, 1337-38 (Fed. Cir. 2000) (quoting Restatement (Second) of Contracts § 251 (Am. Law Inst. 1981)). The Claims Court concluded that "the plain text of the e-mail explains that DLA Energy intended to arrange security escorts for Securiforce." *Securiforce I*, 125 Fed. Cl. at 795. We agree: the government's email was not an indication that it would breach the terms of Mod. 2. If anything, it was a reassurance

that the government was endeavoring to perform. Moreover, Securiforce's CEO acknowledged in an email just four days later that the government already had proposed at least one alternative approach using a private security contractor.

With respect to the period following 2011, Securiforce also asserts anticipatory breach by the government as a result of the government's various statements that no armed security escorts would be provided after 2011. Securiforce contends that "[o]n its face, Mod 0002 could not resolve any security issue other than in 2011, which is all it covered." Appellant Reply Br. 42. In fact, Mod. 2 (agreed to by both sides) specifically stated that "U.S. Government escorts will no longer be provided after December 31, 2011." J.A. 1086. On its face, then, Mod. 2 made clear that no government escorts would be provided beyond 2011. While Securiforce contends that the government was obligated to provide private security, no express provision in the contract required this. We agree, for the reasons stated by the Claims Court, that with respect to the contract prior to Mod. 2, "[t]he inferences which are required in order to conclude that the government was obligated to provide security . . . are not supported in the record." *Securiforce I*, 125 Fed Cl. at 795. The government did not breach the contract by failing to provide security.

Securiforce also contends that the government's refusal to allow it to contract for private security constituted an anticipatory repudiation. Securiforce offered no record evidence that the government barred it from contracting for private, *unarmed* security, and indeed it appears that Securiforce agreed to proceed with unarmed security. On October 19, representatives from both parties took part in a conference call to discuss the security matter. In an email following that call, a DLA supervisor provided a summary "to recap the discussions and make sure we are on the same page going forward." J.A. 3589. In particu-

lar, she noted that "Securiforce agrees to continue performance after December 31, 2011, without government escorts or *armed* private security. Securiforce intends to use *unarmed* escorts and will be requesting an equitable price adjustment." *Id.* (emphases added). There was no evidence that anyone from Securiforce ever contested DLA's summary of the call. Given this apparent agreement among the parties to proceed with unarmed security, we again see no reasonable grounds for Securiforce to have concluded that the government was repudiating its contractual obligations.

## C

Securiforce alleges a series of other government actions or omissions, which the Claims Court found did not constitute a breach of the contract. First, Securiforce argues that the government breached by failing to assist in processing security badges for Securiforce's truck drivers. The Claims Court determined that the "badging of drivers . . . was delayed because Securiforce did not have enough drivers confirmed to operate the contract." *Securiforce I*, 125 Fed. Cl. at 791. The Claims Court did not clearly err: the evidence at trial suggested that although both parties may have contributed, the delay was proximately caused by a lack of diligence on the part of Securiforce.

Second, Securiforce contends that the government's orders for fuel were impermissible "proof of principle" orders. In other words, instead of ordering its full requirements for fuel, the government allegedly placed orders for small quantities to test whether Securiforce would be capable of performing. The Claims Court found that "[t]he testimony . . . seems to support that the [proof of principle] orders were for actual requirements." *Id.* at 796. Securiforce does not appear to contest this factual finding, and this is sufficient to resolve the legal question of breach. Nothing in the contract required the govern-

ment to place orders of any particular frequency or size, so long as it ordered its requirements.

Third, Securiforce argues that the government impermissibly ordered fuel from other vendors for sites awarded to Securiforce. The Claims Court found that "the testimony indicates that the government only filled additional requirements from other sources after Securiforce clearly had indicated that it could not deliver sooner than early November 2011 and while the government waited for Securiforce to be able to perform." *Id.* at 797. The Claims Court's conclusion was not clearly erroneous. When Securiforce repeatedly declared that it could not timely perform, the government was entitled to order fuel elsewhere to satisfy its time-sensitive needs.

Finally, Securiforce suggests that it was not in default because the fuel orders placed by the government—first orally and then in writing—were never entered into the electronic ordering system. This position is directly contradicted by the contract's ordering provision: "The Contractor's nonreceipt of a written or electronic confirmation of an oral order or oral call against a written or electronic order does not itself relieve the Contractor from its obligation to perform . . . ." J.A. 783. Securiforce has not shown that any action or omission by the government excused Securiforce's own failure to perform.

## III

We turn lastly to the Claim Court's denial of Securiforce's sanctions motions, which we review for abuse of discretion. *See, e.g., Harris v. United States*, 868 F.3d 1376, 1378 (Fed. Cir. 2017) (per curiam); *Hendler v. United States*, 952 F.2d 1364, 1380-81 (Fed. Cir. 1991).

Securiforce sought sanctions with respect to several purported failures by the government to comply with Securiforce's discovery requests. First, the government belatedly identified and turned over documents related to

other contracts awarded under the same solicitation as Securiforce's. *Securiforce II*, 127 Fed. Cl. at 396-400.[2] Second, after initially denying that any fuel had been delivered to the Securiforce sites by entities other than Securiforce during the duration of the contract, the government through additional investigation discovered that such deliveries had been made. *Securiforce II*, 127 Fed. Cl. at 400-07. Finally, the witness identified by the government for a Rule 30(b)(6) deposition was not able to answer all of the questions asked by Securiforce's counsel, and the government offered additional witnesses for deposition, which Securiforce declined. *Id.* at 407.

The Claims Court denied each sanctions motion under various subsections of its Rule 37. Each of those subsections contains exceptions that vest substantial discretion in the trial judge in determining whether sanctions are appropriate. *See* Ct. Fed. Claims R. 37(a)(5)(iii) (allowing Claims Court to deny sanctions if "other circumstances make an award of expenses unjust"); *id.* R. 37(b)(2)(C) (same); *id.* R. 37(c)(2)(B) (same if "the admission sought was of no substantial importance"). As described at length by the Claims Court, "[d]iscovery in this case was protracted, contentious, and difficult," *Securiforce II*, 127 Fed. Cl. at 400; Securiforce ultimately received the discovery it sought; and it declined additional witnesses when offered by the government. We see no abuse of

---

[2]    Securiforce also appeals the Claims Court's denial of its motion to compel discovery of these materials. The Claims Court determined that these document requests "were overly broad and not likely to produce evidence relevant to" Securiforce's claims. *Id.* at 399. Because Securiforce concedes that it "finally got the information it had originally requested," Appellant Br. 49, the appeal from the denial of this motion is moot.

discretion in the Claims Court's determination that sanctions were not warranted.

## CONCLUSION

We vacate the Claims Court's entry of judgment with respect to the termination for convenience and remand with instructions to dismiss that claim for lack of jurisdiction. We affirm the Claims Court's judgment in all other respects.

## AFFIRMED IN PART AND VACATED AND REMANDED IN PART

### COSTS

Costs to the United States.