NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SECRETARY OF THE ARMY,**
*Appellant*

**v.**

**KELLOGG BROWN & ROOT SERVICES, INC.,**
*Appellee*

---

2018-1022

---

Appeal from the Armed Services Board of Contract Appeals in Nos. 56358, 57151, 57327, 58583, Administrative Judge Lynda T. O'Sullivan, Administrative Judge Owen C. Wilson, Administrative Judge Richard Shackleford.

---

Decided: July 9, 2019

---

WILLIAM JAMES GRIMALDI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for appellant. Also represented by ROBERT EDWARD KIRSCHMAN, JR., PATRICIA M. MCCARTHY, JOSEPH H. HUNT; CHRISTINALYNN E. MCCOY, RAYMOND M. SAUNDERS, United States Army, Fort Belvoir, VA.

JASON NICHOLAS WORKMASTER, Miller & Chevalier

Chartered, Washington, DC, argued for appellee.  Also represented by RAYMOND B. BIAGINI, HERBERT L. FENSTER, ALEJANDRO LUIS SARRIA, Covington & Burling LLP, Washington, DC.

———————————

Before PROST, *Chief Judge,* LOURIE and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

The Secretary of the Army appeals the decision of the Armed Services Board of Contract Appeals granting Kellogg Brown & Root Services Inc. (KBR) summary judgment of breach of contract and an award of $44,059,024.49 plus interest.  We affirm.

## BACKGROUND

In December 2001, the Army awarded Contract 0007 in the U.S. Army's Logistics Civil Augmentation Program ("LOGCAP III contract") to KBR.  The LOGCAP III contract called for KBR to provide various logistical non-combat services in support of the Army.  It also stated that the Army would provide protection for KBR and its subcontractors while performing these services:

**H-16 Force Protection**

While performing duties [in accordance with] the terms and conditions of the contract, the Service Theatre Commander will provide force protection to contractor employees commensurate with that given to Service/Agency (e.g. Army, Navy, Air Force, Marine, DLA) civilians in the operations area unless otherwise stated in each task order.

J.A. 868 (alteration in original).  Clause H-21 of the contract also forbade the use of "personally owned firearms" by "[c]ontractor personnel."  J.A. 869.

Following the invasion and occupation of Iraq in March 2003, the Army directed KBR to perform several duties under the LOGCAP III contract, including establishing and operating dining facilities in the region to feed the troops. Shortly after the occupation began, Iraqi insurgents began conducting attacks on KBR convoys throughout the country. Initially, the Army did not have sufficient resources to provide military escorts for its contractors and several KBR employees and subcontractors were killed in the attacks. The attacks and insufficient force protection resulted in substantial delays in the delivery of food and supplies. Recognizing the need for additional security forces, the Army entered into discussions with KBR to allow KBR to hire private security contractors (PSCs) for defense. An agreement was never reached, however, as KBR sought to have an indemnity provision included in the contract and the Army refused. KBR nonetheless hired PSCs to protect its employees and subcontractors so that it could continue to carry out its duties in providing food services to the troops. Several commanding officers in the Army supported KBR's use of PSCs, and the Army initially paid those costs without objection.

The Army changed course regarding its payment of PSC costs in early 2007. Following a congressional inquiry, the Army decided that KBR's PSC costs were not allowable under the LOGCAP III contract. By that time, the Army had already paid KBR over $44 million in costs for PSCs, and between 2007 and 2010, the Army recaptured this amount by withholding three payments to KBR from then-outstanding invoices. KBR submitted certified claims in 2007, 2009, and 2010 to the Army's contracting officer under the Contract Disputes Act of 1978 (CDA) for each of the withheld payments. KBR asserted in these claims that PSC costs were allowable under the LOGCAP III contract. The Army contracting officer failed to respond within sixty days of receiving the respective claims, so the claims were deemed denied. KBR challenged the denial of its three

certified claims in a consolidated appeal before the Board, which ruled in KBR's favor and ordered the Army to pay the withheld $44 million. *See Kellogg Brown & Root Servs., Inc.*, ASBCA Nos. 56358, 57151, 57327, and 58559, 14-1 B.C.A. ¶ 35,639, 2014 WL 2931488 (June 17, 2014) ("*KBR I*"); *see also* J.A. 864–904.

In September 2011, while KBR's appeal before the Board was pending, KBR submitted a fourth certified claim to the contracting officer seeking the same $44 million in withheld payments plus interest under the CDA. According to KBR, this claim was filed as a "protective" claim to ensure that the District Court for the District of Columbia had jurisdiction to rule on a False Claims Act lawsuit not at issue here. J.A. 414. This 2011 claim alleged for the first time that the Army breached its obligation under the LOGCAP III contract to provide force protection to KBR and its subcontractors.

The Army appealed the Board's decision in *KBR I* to this court, asking us to decide whether the Board erred in deciding that the LOGCAP III contract did not prohibit the use of PSCs. We reversed the Board in part, holding that the LOGCAP III contract prohibited the use of PSCs and that such costs were thus not allowable. *McHugh v. Kellogg Brown & Root Servs., Inc.*, 626 F. App'x 974, 977 (Fed. Cir. 2015) ("*KBR II*"). At the same time, however, we recognized that "[t]his narrow contract interpretation based on the weapons prohibition . . . may not fully resolve the dispute," and we remanded to the Board to decide in the first instance whether KBR properly raised its breach of contract allegation. *Id.* at 978.

The Board consolidated the remanded KBR claims with KBR's 2011 claim. *Appeals of Kellogg Brown & Root Servs., Inc.*, ASBCA Nos. 56358, 57151, 57327, 58583, 17-1 B.C.A. (CCH) ¶ 36,779, 2017 WL 2676674 (June 8, 2017) ("*Decision*"); J.A. 1–2. KBR then filed an amended complaint alleging twelve counts against the Army. Count II

of KBR's amended complaint alleged that KBR "is entitled to judgment because the Army breached its contractual obligation to provide adequate force protection and the use of PSCs was a permissible remedy." J.A. 2. The Army moved to dismiss Count II for lack of jurisdiction because KBR did not submit a claim to the contracting officer alleging this ground of relief. KBR opposed and also moved for summary judgment on Count II.

The Board ruled in favor of KBR. It explained that the Army's withholding of payment for PSC costs previously paid constituted a government claim. The Board determined that it had jurisdiction because, under this court's decision in *Laguna Construction Co. v. Carter*, Count II is an affirmative defense that did not have to be presented to the contracting officer as a certified CDA claim. 828 F.3d 1364 (Fed. Cir. 2016). It further found that the Army's failure to provide adequate protection constituted a prior material breach of the LOGCAP III contract:

> Indeed, it would be unconscionable to take the position that the contract prohibited KBR[] and its subcontractors from providing for their own protection, while performing in a war zone, without otherwise providing for their security. Yet, despite the many and continuing failures of the government to provide the promised level of force protection to KBR[] and its subcontractors summarized above, the government seeks to disallow the PSC costs incurred by KBR[] and its subcontractors in order to accomplish their mission under the LOGCAP contract despite the government's breach, and argues that its breach was not material. It is hard to imagine a contract breach more material than this one, which eviscerated the promise at the heart of the justification for the government's claim. The government's breach was material.

J.A. 39.  The Board then granted summary judgment on Count II in favor of KBR, explaining that:

> [t]he basis for the government's claim of unallowability is that the costs were incurred in violation of the contract's prohibition against the use of PSCs. Because the record in these appeals establishes that the claimed PSC costs were reasonable in amount and were incurred only when necessitated by the government's failure to provide the contractually promised level of force protection to KBR[] and its subcontractors, the government's prior material breach operates to excuse any subsequent noncompliance with the contract's PSC prohibition.

J.A. 40.  The Board awarded KBR $44,059,024.49 plus CDA interest, with interest calculated from the dates KBR submitted its three initial certified claims.  The Army appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(10) and 41 U.S.C. § 7107(a)(1).

## DISCUSSION

The Army raises three issues on appeal.  First, it argues that the Board did not have jurisdiction because KBR did not submit its breach of contract claim (Count II) as a timely, certified CDA claim.  Second, the Army argues that the Board erred by allowing KBR to re-argue three non-breach counts on remand that, according to the Army, this court had already found unpersuasive in *KBR II*.  And third, the Army alleges that the Board erred in calculating CDA interest by starting the interest clock on the dates that KBR submitted its three initial certified claims.  We address each issue in turn.

### I. Jurisdiction

In accordance with the CDA, we review the Board's decisions on questions of law de novo.  *Sharp Elecs. Corp. v. McHugh*, 707 F.3d 1367, 1371 (Fed. Cir. 2013).  "Whether or not the Board has jurisdiction is a question of law."  *Id.*

(quoting *Arnold M. Diamond, Inc. v. Dalton*, 25 F.3d 1006, 1010 (Fed. Cir. 1994)).

We hold that the Board had jurisdiction to consider Count II of KBR's amended complaint. Count II alleges that the Army breached the LOGCAP III contract by failing to provide adequate force protection and that KBR's use of PSCs was a permissible remedy. The Board properly characterized Count II as an affirmative defense of prior material breach, which was asserted against the Army's claim to recover over $44 million in PSC costs previously paid. Under our precedent, KBR did not have to present this affirmative defense as a certified CDA claim to a contracting officer in order for the Board to exercise jurisdiction.

The CDA requires that "[e]ach claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision." 41 U.S.C. § 7103(a)(1). "Under the CDA, a final decision by a [contracting officer] on a 'claim' is a prerequisite for Board jurisdiction." *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995) (en banc).

The CDA's jurisdictional requirement also applies to claims asserted as affirmative defenses that seek an adjustment of contract terms. In *M. Maropakis Carpentry, Inc. v. United States*, the government sought liquidated damages against a contractor for project delays. 609 F.3d 1323, 1326 (Fed. Cir. 2010). Contractor Maropakis asserted an affirmative defense of excusable delay, arguing that certain contract deadlines should have been extended. *Id.* at 1330. It never presented its claim for a deadline extension to a contracting officer. We held that the Court of Federal Claims did not have jurisdiction over this CDA claim even though it was presented as an affirmative defense. *Id.* at 1331–32. Specifically, we held that "a contractor seeking an adjustment of contract terms must meet the jurisdictional requirements and procedural prerequisites

of the CDA, whether asserting the claim against the government as an affirmative claim or as a defense to a government action." *Id.* at 1331. Similarly, in *Raytheon Co. v. United States*, the government claimed an equitable adjustment to the contract terms as an affirmative defense to a contractor's monetary claim. 747 F.3d 1341, 1353–55 (Fed. Cir. 2014). We reiterated that the CDA's "jurisdictional prerequisite applies even when a claim is asserted as a defense." *Id.* at 1354. Because the government's equitable adjustment defense was never the subject of a contracting officer's final decision, we held that the Court of Federal Claims did not have jurisdiction. *Id.* at 1355.

But we have treated affirmative defenses asserted under the contract as written differently. For example, we have held that common law defenses of prior material breach or fraud do not require a contracting officer's final decision for the trial court to exercise jurisdiction. In *Laguna*, contractor Laguna filed a claim against the government for costs that the government refused to pay. 828 F.3d at 1366. While Laguna's claim was pending, the government discovered that Laguna's employees were involved in a kickback scheme with subcontractors. *Id.* at 1366–67. The government then amended its answer to include the affirmative defense of fraud, and on cross-motions for summary judgment, argued that Laguna's claim should be denied because Laguna committed the first material breach of the contract by the fraud of its employees. *Id.* at 1367. We held that the Board had jurisdiction even though the government's defense was never presented to a contracting officer. *Id.* at 1369. We distinguished *Maropakis* and *Raytheon*, explaining that "the government's defense plainly does not seek the payment of money or the adjustment or interpretation of contract terms." *Id.* at 1368.

We reached a similar result in *Securiforce International America, LLC v. United States*. 879 F.3d 1354 (Fed. Cir. 2018). There, the government terminated part

of a fuel delivery contract for convenience. *Id.* at 1358. Contractor Securiforce then failed to perform and the government terminated the remainder of the contract by default. *Id.* It sued the government in the Court of Federal Claims, alleging that the termination by default was improper. *Id.* at 1358–59. Securiforce argued that the government's earlier termination for convenience was a prior material breach that excused its later failure to perform. *Id.* at 1362. We held that the Court of Federal Claims had jurisdiction even though the defense of prior material breach was never presented to a contracting officer:

> Securiforce asserts a common-law affirmative defense of prior material breach under the contract as written. It neither seeks the payment of money, nor is a decision by the [contracting officer] a necessary prerequisite. Securiforce need not, therefore, have presented that defense to the [contracting officer] in order to later assert it in the Claims Court.

*Id.* at 1363.

The Board correctly characterized the current dispute as involving the Army's claim to over $44 million in PSC costs previously paid. *See* J.A. 8–9. KBR's breach of contract allegation is an affirmative defense to that claim. The Army does not challenge this characterization on appeal. Rather, it argues that, under *Maropakis*, KBR was required to present its affirmative defense to the contracting officer as a timely CDA claim in order to meet the jurisdictional prerequisites of the CDA. *See* Appellant Br. 19–26. We disagree and hold that the Board did not err in concluding that it had jurisdiction over KBR's affirmative defense of prior material breach.

Like the contractor in *Securiforce* and the government in *Laguna*, KBR asserts the affirmative defense of prior material breach under the contract as written. KBR hired PSCs only because the Army first breached its force

protection obligations. So while the LOGCAP III contract prohibits the use of PSCs, the Army's prior material breach excused KBR's noncompliance with that prohibition. KBR's options were to either cease operations or to hire PSCs; it chose the latter so that it could continue supporting the military. In *Laguna*, we held that the Board had jurisdiction over the government's prior material breach defense under the contract as written, which the government asserted to defeat Laguna's monetary claim. 828 F.3d at 1369. And more recently in *Securiforce*, we reiterated that such a defense "is not a claim for money" and need not first be presented to a contracting officer. 879 F.3d at 1362–63. KBR asserts the same defense here. KBR's prior material breach defense seeks denial of the Army's monetary claim to over $44 million, and the Board properly exercised jurisdiction.

We recognize that the posture of this case differs from *Laguna*. The government in *Laguna* asserted its defense to withhold payment whereas KBR asserted its defense to recover payment. We nonetheless conclude that *Laguna*'s teachings apply here. The government pays the contractor for services performed, so monies at issue are necessarily in the hands of the government first. Whether prior material breach is asserted to eliminate debt as in *Laguna*, or to recover withheld payments as here, the effect is the same—the defense is asserted to defeat a wrongful monetary claim.

Contrary to what the Army argues, this case is not like *Maropakis* or *Raytheon* because KBR does not seek to adjust the terms of the contract. *See* Appellant Br. 25–26. The contractor in *Maropakis* asserted excusable delay as an affirmative defense and sought a time extension for performance under the contract. 609 F.3d at 1330. Our conclusion that the Court of Federal Claims lacked jurisdiction turned on the fact that the contractor was seeking "an adjustment of contract terms." *Id.* at 1331. Similarly, the government in *Raytheon* sought an equitable adjustment

to the contract that was less than the dollar amount demanded by the contractor. 747 F.3d at 1353. *Maropakis* and *Raytheon* are thus distinguishable because the parties in those cases sought to change the terms of the contract and did not assert prior material breach as an affirmative defense. As mentioned above, KBR seeks only a denial of the government's monetary claim, not a change to the terms of the contract.

We conclude that the Board had jurisdiction over KBR's affirmative defense of prior material breach. Because jurisdiction over this defense was proper, we do not reach the alternative issue of whether the Board erred by allowing KBR to re-raise its non-breach counts on remand. *See* Appellant Br. 36–43.

## II. CDA Interest

KBR submitted certified CDA claims to the Army contracting officer for $19,652,815 on October 22, 2007, $21,131,743 on October 20, 2009, and $3,274,466.49 on June 16, 2010—totaling the $44,059,024.49 at issue in this case. J.A. 352, 362, 383. The Board awarded CDA interest on these amounts with the interest clock running on the dates KBR submitted the claims. We hold that the Board did not err in its award of CDA interest.

The CDA provides that "[i]nterest on an amount found due a contractor on a claim shall be paid to the contractor for the *period beginning with the date the contracting officer receives the contractor's claim*, pursuant to section 7103(a) of this title, until the date of payment of the claim." 41 U.S.C. § 7109(a)(1) (emphasis added). "[I]nterest is due a contractor on an underlying quantum claim starting from the time that the contractor first submitted a proper quantum claim to the contracting officer until the Government has paid the quantum claim." *J.M.T. Mach. Co. v. United States*, 826 F.2d 1042, 1045 n.1 (Fed. Cir. 1987). In *Fidelity Construction Co. v. United States*, we explained that the CDA interest provision "was designed to serve as a catalyst

and a monetary incentive to the contracting officer to expedite consideration of contract claims." 700 F.2d 1379, 1384 (Fed. Cir. 1983). The provision also provides "additional inducement for the settlement of claims short of litigation." *Id.* (citing *Brookfield Constr. Co. v. United States*, 661 F.2d 159, 164 (Ct. Cl. 1981)).

The Board did not err in determining that the interest period began with the filing of KBR's 2007, 2009, and 2010 claims because those claims were all certified CDA claims received by the Army's contracting officer. Under the CDA's interest provision, that is all that is required for the interest clock to begin. *See* 41 U.S.C. § 7109(a)(1).

The Army argues that the interest period should not have started with the filing of KBR's three initial claims because those claims relied solely on the theory that PSC costs were allowable under the contract—a theory we rejected in *KBR II*. Appellant Br. 34–35. It notes that KBR did not raise its breach of contract defense until September 2011. *Id.* at 35. Because breach of contract is what KBR ultimately prevailed on, the Army argues that September 2011 is the earliest point at which interest could have commenced. *Id.* The Army also cites to several cases from the Board and the Court of Federal Claims holding that contractors are not entitled to CDA interest on successful defenses against government claims. *See id.* at 33–34.

We disagree with the Army. We are aware of no authority instructing that a contractor must state in a claim the legal theory upon which it ultimately recovers to start the running of interest. Indeed, the Army recognizes as much. *See* Reply Br. 22. The statute requires only that the contracting officer receive a certified CDA claim, which is what occurred here. And while the Court of Federal Claims cases cited by the Army do stand for the proposition that defenses to government claims alone are not entitled to CDA interest, *see* Appellant Br. 33–34, those cases are at a

minimum distinguishable because, in each, the contractor did not file any CDA claim. *See e.g., K-Con Bldg. Sys., Inc. v. United States*, 107 Fed. Cl. 571 (2012); *Ruhnau-Evans-Ruhnau Assocs. v. United States*, 3 Cl. Ct. 217 (1983); *Magnus Pac. Corp. v. United States*, 133 Fed. Cl. 640 (2017).[1] We conclude that the Board did not err in its award of CDA interest.

CONCLUSION

We have considered the Army's remaining arguments and find them unpersuasive. The Board properly exercised jurisdiction over KBR's affirmative defense of prior material breach and did not err in awarding CDA interest. We affirm the Board's judgment.

**AFFIRMED**

---

[1]     Because these cases are distinguishable on the facts, we do not address the propriety of the Court of Federal Claims' analysis in these cases.