ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Coastal Environmental Group, Inc. | )    ASBCA No. 60410 |
| | ) |
| Under Contract No. N40085-13-C-6541 | ) |

APPEARANCES FOR THE APPELLANT:     John M. Manfredonia, Esq.
    James Petersen, Esq.
     Manfredonia Law Offices, LLC
     Cresskill, NJ

APPEARANCES FOR THE GOVERNMENT:     Ronald J. Borro, Esq.
     Navy Chief Trial Attorney
    Matthew D. Bordelon, Esq.
    Robert R. Kiepura, Esq.
    Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE MCILMAIL

### FINDINGS OF FACT

On September 23, 2013, the parties contracted for appellant to make repairs to the Security Boat Marina at Naval Weapons Station Earle, Leonardo, New Jersey (R4, tab 5 at 204, 206). Specifically, the work consisted of work to three in-water features; namely, a "short wall," a "long wall," and a buoy (*id.* at 233-34, ¶ 6; tr. 3/46). The contract incorporated by reference Federal Acquisition Regulation (FAR) 52.249-10, DEFAULT (FIXED-PRICE CONSTRUCTION) (APR 1984), which provides:

> (a) If the Contractor refuses or fails to prosecute the work or any separable part, with the diligence that will insure its completion *within the time specified in this contract* including any extension, or fails to complete the work within this time, the Government may, by written notice to the Contractor, terminate the right to proceed with the work (or the separable part of the work) that has been delayed.

(R4, tab 5 at 209) The contract provided 135 days from the date of award to complete the work; that is, through February 5, 2014 (*see id.* at 203).

Unless otherwise indicated, the following events all occurred in 2015. On January 8, the government ordered appellant to stop work, stating that "no work shall commence until you receive further notice from the Government" (app. supp. R4, tab 66 at 1-2). On July 31, in Modification No. 5, the parties agreed (1) to an increase in the contract price; (2) that "[i]n conjunction with the work specified in the subject contract," appellant would "[r]epair additional damage to the wave screen...that occurred since contract award"; and (3) that the contract completion date would be November 26, 2015 (R4, tab 7 at 381-82). The modification included the following "Contractor's release":

> Acceptance of this modification by the contractor
> constitutes an accord and satisfaction and represents
> payment in full for both time and money and for any and
> all costs, impact effect, *and for delays and disruptions*
> *arising out of, or incidental to, the work as herein revised.*

(*Id.* at 382, ¶ 5 (emphasis added))[1]

On September 15, the government requested that appellant provide an updated project schedule by the following day (R4, tab 20 at 428). Two days later, on September 17, the government told appellant that it "must contact this office in writing by 4:00 p.m. today if you plan to meet the terms of your contract by the scheduled completion date" (*id.* at 427-28). The government stated further that "[i]f the requested information is not provided today or if you have determined that you are no longer able to meet the obligations within your contract, the Government intends to move forward and terminate your contract for default" (*id.* at 428). Minutes before the 4:00 p.m. deadline, appellant provided to the government a project schedule that indicated (among other things) that it would take three days to complete the mobilization of equipment and materials to the site, and that if mobilization were complete by September 30, appellant would complete the contract work on November 26, 58 days later (*see id.* at 429, lines 22-23, 60).

On October 5, the government complained to appellant that appellant had not "completed or met one single item" on its September 17, 2015 schedule (R4, tab 22 at 434). Appellant responded on the same day, acknowledging that it was "behind schedule" and that it had not yet mobilized to the site, explaining that that it had "intentions of mobilizing within the next two weeks" (*id.* at 433). Appellant explained that "whaler systems...are waiting to be delivered onsite," that "additional sheet

---

[1] Prior to the execution of Modification No. 5, the parties had bilaterally executed Modification Nos. 2 through 4 which collectively had extended the contract completion date to December 30, 2014. Each of those modifications included the same release language as in No. 5. (App. supp. R4, tabs 10-12)

piles...are awaiting confirmation of lead time and delivery," and that "[m]iscellaneous steel and timber capping shall be provided by the Subcontractor" (*id.*). Appellant further stated that it was "working to confirm exact dates *in order to provide an updated schedule*" to the government (*id.* (emphasis added)). By October 8, 2015, appellant had not mobilized its equipment and materials to the site (*see* tr. 3/169-70).

On October 8, with 50 days remaining before the November 26 contract completion deadline, the contracting officer terminated the contract for default, citing "continued lack of progress thereby endangering completion as required by the contract" (R4, tab 25). Appellant appealed to the Board on January 8, 2016. Appellant is a New York corporation that dissolved on June 29, 2016 (tr. 3/110, 114).

The project manager of a maritime construction company that appellant had planned to hire to perform the onsite work testified at the hearing of the appeal that the company was prepared to perform the work and complete it by November 26, 2015, working only 8 hours per day, but that, "if there was any kind of need to escalate, we had 24 hours a day to work" (tr. 4/13-14). The project manager provided a breakdown of how the work would have progressed, including that most of the work would have progressed simultaneously (tr. 4/20-21, 29, 33).

## DECISION

Appellant wants the termination for default converted to one for the convenience of the government. The government says that the Board does not possess jurisdiction to entertain the appeal because appellant is a New York corporation that has been dissolved since June 29, 2016 (*see* gov't br. at 25). We look to the law of the state of incorporation to answer that question. *See TPS, Inc.*, ASBCA No. 52421, 01-1 BCA ¶ 31,375 at 154,916. Under New York law, "[t]he dissolution of a corporation shall not affect any remedy available to or against such corporation...for any right or claim existing...before such dissolution." N.Y. Bus. Corp. Law § 1006(b) (McKinney 2018). The "right or claim" here, appellant's challenge to the government's termination of its contract, arose on the date of that termination: October 8, 2015. The subsequent dissolution of appellant does not affect appellant's capacity to appeal from the termination of the contract, or our jurisdiction to entertain that appeal.

Regarding the termination of the contract for default for failure to make progress ("continued lack of progress," as the contracting officer put it), the question is whether the government has demonstrated that on October 8, 2015 (the termination date), it was reasonable to conclude that there was no reasonable likelihood that appellant would complete the project by November 26, 2015 (the contract completion date). *See Securiforce International America, LLC v. United States*, 879 F.3d 1354, 1364 (Fed. Cir. 2018); *Empire Energy Management Systems, Inc. v. Roche*, 362 F.3d 1343, 1357 (Fed. Cir. 2004); *Nelson, Inc.*, ASBCA Nos. 57201, 58166, 16-1 BCA ¶ 36,195 at 176,588 (involving

3

FAR 52.249-10(a)). On September 17, 2015, appellant provided the government a project schedule indicating that it would take 3 days to mobilize, and 58 days to complete the work once mobilization was complete. By October 8, only 50 days remained before the November 26 contract completion date, and appellant had not begun mobilization. Moreover, on October 5, only three days before the October 8 termination of the contract, appellant told the government that a new project schedule was forthcoming, and that it *intended* to mobilize within "*the next two weeks*." Those events indicated that, as of October 8, 2015, (1) appellant's September 17 schedule projecting contract completion by the November 26 contract completion date was no longer operative; (2) the earliest appellant could complete the work (and only if it commenced mobilization immediately; that is, by October 9) was December 9, 2015, 13 days after the contract completion date; and (3) appellant might not complete mobilization until October 19 (14 days after its October 5 communication), in which case it would not complete the work until December 16, 2015, 20 days after the contract completion date. Those facts made it reasonable to conclude on October 8, 2015, that there was no reasonable likelihood appellant would to complete the project by November 26, 2015 (the contract completion date). *Cf. Empire Energy*, 362 F.3d at 1357-58 (affirming denial of appeal from termination of contract for default for failure to make progress where contractor was 154 days from contract completion with only 106 days to complete on time).

Appellant says that it could have completed the work on time, pointing to the testimony of the project manager of the maritime construction company that appellant had planned to hire, who testified that the work could have been completed by November 26, 2015, working only one shift per day, or through acceleration, if necessary. That post-termination evidence does not change our conclusion; the issue is whether it was reasonable to conclude on October 8, 2015, that there was no reasonable likelihood that appellant would complete work within the time remaining. *See Securiforce*, 879 F.3d at 1364; *McDonnell Douglas Corp. v. United States*, 323 F.3d 1006, 1017 (Fed. Cir. 2003) ("Limiting the inquiry to the time of the termination action reduces the potential for hindsight bias."). Appellant points to no evidence that the government was aware on October 8, 2015, of any plan to complete the work between then and November 26, 2015, even through acceleration. Indeed, what appellant had told the government by then indicated that appellant needed at least 13 days more than remained to complete the work. Consequently, the termination for default is justified.

Now it's up to appellant to demonstrate that its default was excusable. *See Joseph Sottolano*, ASBCA Nos. 59081, 60043, 16-1 BCA ¶ 36,315 at 177,065. Appellant says that the real contract completion date is June 15, 2016, because the government stopped work from January 8 through July 29, 2015, when the parties entered Modification No. 5 (app. br. at 12-13, 19 n.3). Modification No. 5, without saying so, lifted the government's January 8, 2015 stop-work order by setting a new

4

contract completion date.[2] However, in the modification's "Contractor's release," appellant waived any pre-modification causes of government-caused delay. Appellant says that the release is limited by the phrase "the work as herein revised" to the additional repairs to the wave screen that are specified in the modification (app. br. at 14), but the release doesn't use a phrase, for example, like "the revisions to the work herein" that might have limited its application to the work introduced by the modification. *Compare Ingalls Shipbuilding Div., Litton Sys., Inc.*, ASBCA No. 17579, 78-1 BCA ¶ 13,038 at 63,663 (release stating "in full and final settlement of all claims arising out of this modification...including all claims for delays and disruption resulting from, caused by, or incident to such modifications or change orders" was "for the particular modifications...referenced"). Rather, the "work" referenced in the release is the same "work specified in the subject contract" referenced elsewhere in Modification No. 5. The modification revises the "work specified in the subject contract" by adding to that work the repairs to the wave screen referenced (as the release describes) "herein"; that is, in the modification. The release then, applies to *"any and all...delays and disruptions arising out of, or incidental to"* the "work specified in the subject contract"; that is, to *all* the contract work, including delays arising out of, or incidental to, the government's January 8, 2015 stop-work order. *Cf. Great America Construction Co.*, ASBCA Nos. 60437, 60501, 16-1 BCA ¶ 36,460 at 177,678 (release "from all liability and from all existing and future claims and demands that it may have under this contract, insofar as it pertains to the contract" was a general release that barred all claims). Indeed, with Modification No. 5, the parties wiped the slate clean and started anew. *See Colonial Manufacturing Co.*, ASBCA No. 18703, 75-1 BCA ¶ 11,026 at 52,500. Appellant has not demonstrated that its default was excusable.

CONCLUSION

The appeal is denied.

Dated: July 17, 2018

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

---

[2] Appellant admits that in its view, "Modification P00005 meant that the Navy's stop work order had been lifted" (app. br. at 5, ¶ 26).

5

I concur                                    I concur

RICHARD SHACKLEFORD                          J. REID PROUTY
Administrative Judge                         Administrative Judge
Acting Chairman                              Vice Chairman
Armed Services Board                         Armed Services Board
of Contract Appeals                          of Contract Appeals


I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60410, Appeal of Coastal Environmental Group, Inc., rendered in conformance with the Board's Charter.

Dated:


JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

6