ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of - | ) |
| | ) |
| ECC International, LLC | ) ASBCA Nos. 60167, 60283 |
| | ) |
| Under Contract No. W912DQ-11-C-4009 | ) |

APPEARANCES FOR THE APPELLANT:    R. Dale Holmes, Esq.
    Amy M. Kirby, Esq.
    Michael A. Richard, Esq.
      Cohen Seglias Pallas Greenhall &
        Furman PC
      Philadelphia, PA

APPEARANCES FOR THE GOVERNMENT:    Michael P. Goodman, Esq.
      Engineer Chief Trial Attorney
    Martin Chu, Esq.
      Engineer Trial Attorney
      U.S. Army Engineer District, Baltimore

    Samuel J. Harrison, Esq.
    Michael E. Taccino, Esq.
    Matthew Tilghman, Esq.
      Engineer Trial Attorneys
      U.S. Army Engineer District, Middle East
      Winchester, VA

    Kathryn G. Morris, Esq.
      Engineer Trial Attorney
      U.S. Army Engineer District, Nashville

<u>OPINION BY ADMINISTRATIVE JUDGE EYESTER</u>
<u>ON THE GOVERNMENT'S MOTION FOR RECONSIDERATION</u>

The U.S. Army Corps of Engineers (USACE or government) moves for reconsideration of the Board's February 24, 2022 post-hearing decision in ASBCA Nos. 60167 and 60283 concerning the government's affirmative defense of waiver and ECC International, LLC's (ECCI or appellant) Defense Base Act (DBA) premium claim. For the following reasons, we deny the request in part and remand it in part to the parties to decide quantum regarding the DBA premiums owed.

DECISION

Familiarity with the decision of *ECC Intern'l, LLC*, ASBCA Nos. 58993, 60167, 60283, 22-1 BCA ¶ 38,073, is presumed.[1]  However, we provide an abbreviated version of the facts relevant to the government's motion.

USACE awarded ECCI a contract to construct a Military Police School and a Signal School at Camp Shaheen, Afghanistan.  *ECC Intern'l, LLC*, 22-1 BCA ¶ 38,073 at 184,868 (finding 1).  Ultimately, ECCI filed a certified delay claim on the contract at issue here, along with several other claims on various contracts with performance in Afghanistan.  *Id.* at 184,890.  The parties decided to hold a settlement negotiation (referred to as an Executive Session) on those claims and entered into an agreement, dated January 15, 2015, outlining the terms of the negotiations.  *Id.*  This Executive Session agreement stated in pertinent part:

> The parties agree that only those appeals, claims and [requests for equitable adjustments (REAs)] listed in Attachment A are to be the subject of the Executive Session.  Both parties understand that ECCI has ongoing projects in Afghanistan which may be subject to later claims.  These claims are not included in the current Executive Session.  Any further claims, REAs, and appeals to the Board or to the Court of Federal Claims arising from any of ECCI's contracts with USACE, for projects performed in Afghanistan, under which performance has been completed as of the date of this agreement, must be submitted or filed with specific notice given to the Army Corps of Engineers, Middle East District Office of Counsel on or before May 15, 2015, provided that the (substantive, as opposed to procedural) transactions or occurrences underlying such claims, REAs, or appeals have occurred before that date.  Those REAs, claims or appeals will be added to the Executive Session by mutual agreement of the parties, if practicable.  If USACE does not agree to the addition of any REA's, claims or appeals identified prior to May 15, 2015, but not currently set forth in Exhibit A, ECCI reserves the right to prosecute such claims outside the confines of the Executive Session as it sees fit.  If any REAs, claims, or appeals (on completed Afghanistan

---

[1] The government only moves for reconsideration of the decision as it relates to ASBCA Nos. 60167 and 60283.  Judge O'Sullivan, who authored the decision, has since retired.

2

Projects) are not filed or submitted and brought to the attention of USACE prior to May 15, 2015, they shall be forever waived.

*Id.* (Quoting R4, tab S-74 at 1, n.3) The Executive Session began on June 9, 2015 and the parties ultimately entered into a settlement agreement effective September 21, 2016. *Id.* at 184,882 (finding 70).
.

ECCI filed additional claims. Its claims with the Board in the appeals at issue here sought compensation for the costs of mitigating collapsible soils at the project site; damages for an unreasonably imposed and enforced period of performance as identified by a biddability, constructability, operability, and environmental (BCOE) review; and reimbursement for DBA insurance premiums. *ECC Intern'l, LLC*, 22-1 BCA ¶ 38,073 at 184,867. With respect to what is referred to as the BCOE claim, the government asserted the following affirmative defenses: (1) ECCI waived its BCOE claim when it failed to submit the claim by May 15, in accordance with the Executive Session agreement; and (2) the BCOE claim was part of the September 2016 settlement agreement and therefore settled and released. *Id.* at 184,890. As relevant here, the Board ultimately concluded it did not have jurisdiction over the government's affirmative defense of waiver and found ECC entitled to damages on part of the BCOE claim. *Id.* at 184,890-97. The Board also found ECC entitled to reimbursement for the DBA insurance premiums. *Id.* at 184,899.

*Standard of Review*

In reviewing a motion for reconsideration, the Board will look to whether the movant has presented newly discovered evidence, mistakes in findings of fact, errors of law, or failure of the Board to consider an appropriate matter. *See Kellogg Brown & Root Servs., Inc.*, ASBCA Nos. 57530, 58161, 16-1 BCA ¶ 36,554 at 178,042; *Relyant, LLC*, ASBCA No. 59809, 18-1 BCA ¶ 37,146 at 180,841. A party moving for reconsideration "must show a compelling reason" why the Board should alter its decision. *Precision Standard, Inc.*, ASBCA No. 59116, 15-1 BCA ¶ 36,155 at 176,445.

In addition, a motion for reconsideration is not the place to present arguments previously made and rejected, or to advance arguments that should have been presented in an earlier proceeding. *Assist Consultants Inc.*, ASBCA Nos. 61525, 62090, 21-1 BCA ¶ 37,946 at 184,297; *Precision Standard, Inc.*, *supra*. Specifically, a motion for reconsideration is not the time "for bolstering contentions that the Board has already rejected." *Raytheon Co. and Raytheon Missile Sys.*, ASBCA Nos. 59435 *et al.*, 21-1 BCA ¶ 37,860 at 183,844.

3

During the hearing, the Board stated: "[I] think we may have some jurisdictional problems with the waiver defense because it's based on an express provision of an agreement which is a standalone agreement, it's not related to the contract, the procurement contract that's at issue here." The Board further stated "the waiver defense essentially asks the [B]oard to enforce a provision of the standalone agreement between the parties that led up to the settlement proceeding." (Tr. 2/8) The Board then permitted the parties to elicit some testimony on the issue in case the waiver defense was a viable defense for the government (tr. 2/9).

In its decision, the Board explained that in an effort to refute the Board's concerns that the Executive Session agreement was not within the purview of the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-09, the government's post-hearing briefs cited cases discussing concluded settlement agreements or binding alternative dispute resolution proceedings but not private standalone agreements to *discuss* a settlement. *ECC Intern'l, LLC*, 22-1 BCA ¶ 38,073 at 184,890. The Board therefore concluded it did not have jurisdiction over the affirmative defense of waiver based on a private agreement to negotiate a settlement agreement. *Id.*

In its motion for reconsideration, USACE contends the Board's conclusion was an error of law and will have a chilling effect on the willingness of parties to engage in settlement negotiations (gov't mot. at 1). Specifically, the government argues that "CDA jurisdiction need not be established for the Board to consider and uphold a common law affirmative defense such as the express waiver defense" presented here. The government contends that while defenses that request adjustment of contract terms must meet the jurisdictional prerequisites of the CDA, the common law defense of waiver does not because it does not require an adjustment to the contract terms. (Gov't mot. at 3)

The government cites to *AFSA Int'l Constr. Ind. and Trade, Inc.*, ASBCA No. 57880, 14-1 BCA ¶ 35,736 as support (gov't mot. at 3). In that decision, the Board ruled a contractor could raise the defense that the government waived its right to the completion dates and liquidated damages without first filing a CDA claim. *AFSA Int'l Constr. Ind. and Trade, Inc.*, 14-1 BCA ¶ 35,736 at 174,911. The Board held that while the contractor's defense did not seek an adjustment or modification of the contract terms, it did maintain the government waived rights already granted by the contract and therefore there was no requirement to submit a CDA claim before asserting such a defense. *Id.* That case is irrelevant here as the Board did not state, either at the hearing or in the decision, that a CDA claim needed to first be filed before consideration of the asserted defense. And regardless, here there is no allegation the appellant waived rights specifically granted under the government contract as written. *See Securiforce Int'l America, LLC v. United States*, 879 F.3d 1354, 1362-63. In this

regard, in *AFSA Int'l*, there was no pre-negotiation standalone document on which the contractor was relying solely to support its defense.

The government acknowledges the Board has jurisdiction to consider concluded settlement agreements and binding alternative dispute resolution proceedings but also argues that the Board should extend this jurisdiction over the "the private settlement agreement" in this appeal (gov't mot. at 5-6). The Executive Session agreement outlining the procedures for the nonbinding mediation was signed by counsel for the government and ECCI; the agency contracting officer did not sign the document (R4, tab S-74 at 5). The government cites to no recent law, decisions or otherwise, to support its conclusion and demonstrate an error of law in our decision. Rather, after being told at the hearing of the Board's concerns, the government tries to take another bite at the apple by attempting to bolster contentions we have already rejected, or setting forth arguments that should have been presented in its post-hearing briefs after the Board judge informed the parties of the jurisdictional concerns.[2] Accordingly, the government's motion here fails.

---

[2] For example, in its post-hearing brief, USACE argued that ECCI waived all claims not submitted by May 15, 2015, in the Executive Session agreement which "amounted to a partial compromise or settlement agreement" (gov't br. at 99). Likewise, the government's motion for reconsideration several times states the Executive Session agreement is a settlement agreement (although an atypical one) (*see, e.g.*, gov't mot. at 6). In its motion, however, the government also argues that the USACE trial attorney here "was acting within the scope of delegated authority from the Chief Trial Attorney to conduct litigation, and specifically had authority to 'enter into an agreement on matters for which there [was] no substantial controversy and which [would] not have the effect of disposing of an appeal'" (gov't reply at 7 quoting Army Federal Regulation Acquisition Supplement (AFARS), § 5133.212-96(b)(1)). It seems the agency is saying the AFARS grants the trial attorney the authority to enter into a settlement agreement, with no mention of the role of the contracting officer here such as his/her authority or responsibility. USACE never raised the AFARS in its post-hearing briefs despite the Board specifically stating its concerns over the standalone Executive Session agreement between *private* parties and the appellant's post-hearing brief arguing the agreement was not a settlement agreement as it was not signed by the contracting officer or reduced to a contract modification (app. reply br. at 85). Rather, in its post-hearing brief, the agency merely stated that the agency counsel could bind the government in this Executive Session settlement agreement because he "had the power to commit to every obligation he undertook in that agreement on behalf of the Government" which was the procedural handling of disputes (resp. reply br. at 6-7).

In addition, during the hearing the Board also stated there could be some interpretation issues with the agreement. Specifically, the Board stated it was unsure if the June 15 BCOE claim could be waived as of May 15 if the claim was based on documents that were produced as part of the settlement process (tr. 2/8). In the decision, the Board noted that the BCOE claim was based on documents ECCI received from the government through discovery shortly before the Executive Sessions began and ECCI was not aware of the BCOE claim before receipt of these documents. *ECC Intern'l, LLC*, 22-1 BCA ¶ 38,073 at 184,890. Therefore, even if the Board had jurisdiction, the government did not show that ECCI intended to waive the BCOE claim--a claim that it did not yet know existed by May 15. Further, the Board stated that the language in the Executive Session agreement did not expressly include such unknown claims and the words "appeals, claims and REAs" used in the footnote imply the matter was known and already part of the negotiation or dispute process. *Id.* at 184,890-91.

The government argues the agreement unambiguously applied to ECCI's claims unknown at the time (gov't reply at 2). In this regard, the government contends the agreement states that for completed Afghanistan projects, any further claims, REAs and appeals to the Board or court must be submitted or filed, with notice to USACE, by a date certain in May, and those claims, REAs or appeals may be added to the list of claims to be negotiated at the Executive Session. The agreement, however, also states that "the (substantive, as opposed to procedural) transactions or occurrences underlying such claims, REAs, or appeals" must have occurred before that May date. The Executive Session agreement then states that if any REAs, claims or appeals are not filed or submitted to USACE by that date, they are forever waived. Contrary to the government's assertions, the agreement is not a model of clarity, and the government has failed to show that the Board's interpretation is incorrect.

*The DBA Claim, ASBCA No. 60283*

The contracts at issue here contained a provision requiring ECCI obtain DBA insurance and maintain it until performance completion. *ECC Intern'l, LLC*, 22-1 BCA ¶ 38,073 at 184,883 (finding 77). A contract line item number contained ECCI's estimated DBA premium, including for ECCI's subcontractors, but also stated that the government would pay the actual amount of the premiums as shown on the insurance company's invoice. *Id.* If the insurance company recalculated the premiums, the contract would be adjusted via modification to reflect the change. *Id.*

ECCI's estimated DBA premiums for the MP School and Signal School were $159,952.20, for which ECCI was paid. *ECC Intern'l, LLC*, 22-1 BCA ¶ 38,073 at 184,883 (finding 78). During performance, ECCI incurred costs for DBA insurance premiums totaling $210,296, including premiums for its subcontractors. *Id.* at 184,884 (finding 82). ECCI did not reimburse separately its subcontractors the premiums; rather,

the subcontractors were reimbursed via invoices submitted against their fixed-priced subcontracts for all work performed. *Id.* at 184,883 (finding 78). The insurance company recalculated the premiums and sent a refund of $64,283 directly to USACE, not ECCI, and then USACE issued a modification to the contract reducing the contract price and hence payments to ECCI in the amount of $64,283. *Id.* at 184,884 (finding 80). ECCI argued the government should not have modified the contract once it received the refund. *Id.*

The Board held that USACE recovered $64,283 twice--once from the insurance company and once from the modification reducing the contract price. *ECC Intern'l, LLC*, 22-1 BCA ¶ 38,073 at 184,885 (finding 85). The Board further held that there were no legal issues associated with this issue, just basic arithmetic. *Id.* at 184,897. In this regard, as the amount ECCI paid was $210,296, which USACE did not dispute, and USACE had paid ECCI the $159,952.20, but then reduced the contract line item by $64,283, USACE owed ECCI $114,627 plus CDA interest for the DBA premiums. *Id.* at 184,899.

In its motion for reconsideration, the government argues the Board decided quantum despite specifically informing the parties it would only decide entitlement (gov't mot. at 12). Specifically, the government contends the Board's holding that USACE recovered twice on the insurance DBA recalculations is an issue of quantum because USACE did not present all of its available financial records or call any employee to testify on such records (*id.*). The government argues that such financial records will prove "there were no deductions from contract payments to Appellant in the amounts alleged by Appellant and awarded in the Board's Decision based on a decontextualized interpretation of pay estimates" (*id.* at 12-13). In a footnote, the government contends the "Appellant has realized that the logical deduction by which it concluded that the amounts of DBA refunds were withheld from its contract payments is inconsistent with contract payment records" and therefore a hearing would not be necessary and the parties could merely exchange evidence and agree on quantum (*id.* at 13, n.1). The appellant failed to respond to the government's argument and concluded its brief by saying only that the Board should deny the government's "jurisdictional Motion to Reconsider" (app. reply at 10).

In sum, USACE does not dispute the legal holding that there was a double recovery on the insurance premium by USACE, or other legal holdings on this issue. Rather, USACE argues that documents must be reviewed to determine actual payments made to the appellant under the fixed-priced contract to deduce the specific amount owed the appellant in light of the Board's holding. As the appellant did not disagree with the government's argument, we return the appeal to the parties to negotiate and resolve quantum on this issue.

7

CONCLUSION

Accordingly, the government's motion for reconsideration is denied in part and granted in part to the extent that we return the appeal to the parties to negotiate and resolve quantum regarding the DBA claim consistent with this decision.

Dated: May 9, 2023

LAURA EYESTER
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 60167, 60283, Appeals of ECC International, LLC, rendered in conformance with the Board's Charter.

Dated: May 9, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

8