ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| J&J Maintenance, Inc., d/b/a J&J | )    ASBCA No. 63013 |
|   Worldwide Services | ) |
| | ) |
| Under Contract No. 47QSHA-19-D-003F | ) |
|   Task Order Nos. HDEC03-20-F-0046 | ) |
|                 HDEC03-20-F-0048 | ) |
|                 HDEC03-20-F-0049 | ) |

APPEARANCES FOR THE APPELLANT:     Stephanie Magnell, Esq.
                                   Adam Lasky, Esq.
                                   Anthony J. LaPlaca, Esq.
                                    Seyfarth Shaw LLP
                                    Washington, DC


APPEARANCES FOR THE GOVERNMENT:    Betsy E. Dulin, Esq.
                                    Principal Deputy General Counsel
                                    Defense Commissary Agency
                                    Fort Lee, VA


OPINION BY ADMINISTRATIVE JUDGE MCLISH
ON GOVERNMENT'S MOTION TO DISMISS


Respondent, the Defense Commissary Agency (DeCA or government), moves to dismiss this appeal on the ground that the Board lacks jurisdiction because appellant's claim to the contracting officer did not demand a "sum certain," as required for monetary claims under the Contract Disputes Act and its implementing regulations.  Appellant, J&J Maintenance, Inc., d/b/a J&J Worldwide Services (J&J), contends that no sum certain was required because its claim is a nonmonetary one.  The government argues that the purported nonmonetary claim is in truth a monetary claim for which a sum certain was required.  We grant the motion in part and deny it in part.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

1.  DeCA awarded J&J three task orders on the above-captioned contract to perform preventative maintenance and repair services for commissary facilities, HDEC03-20-F-0046 (Maintenance Group 2); HDEC03-20-F-0048 (Maintenance Group

6); and HDEC03-20-F-0049 (Maintenance Group 8). The task orders[1] were for one year, commencing on July 1, 2020, with four option years. (R4, tabs 2-4, 46 at 5178-79)

2. The task orders provide that J&J will perform preventative maintenance services and program management on a fixed-price basis, while repairs (unscheduled and emergency maintenance) will be compensated on a time and materials basis (R4, tab 5 at 4904-05).

3. J&J subcontracts many of the services it performs under the task orders (compl. ¶ 15).

4. During performance of the task orders, a dispute arose between the parties regarding J&J's invoicing for subcontracted work performed on a time and materials basis (R4, tab 30 at 5071).

5. When time and materials pricing is used, the government reimburses the contractor for the actual cost of materials. FAR 16.601(b). The task orders at issue here required J&J, when invoicing for time and materials work, to provide evidence of the actual costs of the materials, in the form of "supply house" invoices (R4, tab 5 at 4906).

6. Section 4 of the Request for Quotation (RFQ) Performance Work Statement (PWS) addresses "Compensation for Services," and includes the following:

> 4.4. Repair CLINs will be compensated on a time and material basis, at the applicable rates set forth in the contract CLIN structure and associated contract attachments and with reimbursement for substantiated material costs, except that, at the discretion of the Contracting Officer, compensation for major repairs shall be made on a fixed price basis[.] Work performed by sub-contractors shall be compensated at the contractually established hourly rates.

> 4.5. For any materials or subcontracted work, the Contractor may be required to provide at least three quotes from other sources if the Approving Authority or Field Engineer determines that the cost estimate is not fair and reasonable. The Contractor shall not charge or be entitled to additional compensation for profit, percentages, fees, or hours in excess of those charged by its subcontractors.

---

[1] Appellant refers to the orders at issue as "task orders," while the government contends they are "delivery orders." We see no present need to resolve this issue. For convenience, we refer to them herein as task orders.

. . . .

4.9. The Contractor will be reimbursed for the cost of materials and associated material handling costs in accordance with Paragraph 2.8., above, provided that the Contractor has made payments for materials in accordance with the terms and conditions of this contract. The Contractor shall invoice material handling costs with material costs and shall collect material handling costs in a separate pool in its accounting system to avoid double billing and compensation.

4.10. Material costs include expenses incurred for direct materials, equipment, and subcontracts for supplies incidental to the Work performed by the prime or subcontractor, and substantiated by supply house invoices.

(R4, tab 5 at 4904-06) (Emphasis added)

7. J&J contends that, where materials are provided by a subcontractor, J&J's "actual cost of materials" are the costs it pays its subcontractors for them, including any markup included by the subcontractor. J&J further contends that the invoices it receives from its subcontractors satisfy the requirement for "supply house invoices." (R4, tab 30 at 5072)

8. J&J relies, in part, on DeCA's responses to offerors' written questions submitted prior to the deadline for submitting quotation for the task orders at issue (R4, tab 30 at 5071). The Government's responses to questions Nos. 47 and 48 were as follows:

> QUESTION 47: PWS 3.3-supply house invoices. Is this meant to be for any materials that the prime contractor supplies?
> GOVERNMENT ANSWER: Contractors and/or Subcontractors shall provide supporting documents to justify price.
> QUESTION 48: PWS 3.3-will a subcontractor quote for materials suffice for the above?
> GOVERNMENT ANSWER: Yes[.]

(R4, tab 6 at 4944)

9. DeCA disagrees with J&J's interpretation of the task orders. DeCA requires J&J to submit evidence of the actual cost of the materials to the subcontractor and maintains that DeCA is not required to pay any subcontractor markup on the materials. DeCA further contends that the subcontractor invoices are not the functional equivalent of "supply house invoices" and that J&J must submit evidence of the amount the subcontractor paid for the materials. DeCA informed J&J that it does not intend to pay for materials purchased in connection with the task orders unless J&J's submissions meet the government's requirements. (R4, tab 46 at 5179-85)

10. According to J&J, DeCA has, on at least some occasions, approved payment for materials based on subcontractor quotations if J&J submitted independent evidence that the prices the subcontractor charged J&J for materials were competitive (app. br. at 2-3). J&J calls this a "workaround" (*id.*). The government disagrees with that characterization (gov't reply br. at 6).

11. In a letter to the contracting officer, J&J requested a final decision confirming that (a) J&J's subcontractors were permitted to charge markups on materials; and (b) J&J was not required to submit supply house invoices for materials (R4, tab 30 at 5067). The letter stated "[t]his Claim does not include any request for monetary compensation at this time, however . . . J&J reserves the right to submit a subsequent claim for an equitable adjustment stemming from the Government's insistence on providing supply house invoices . . . " (*id.* at 5073).

12. The contracting officer issued a final decision. The decision first found that J&J had not submitted a proper claim, asserting that "[i]f a significant result of purported claim is payment of additional compensation to the Contractor, then the Contractor must state a 'sum certain' in connection with the claim" (R4, tab 46 at 5182) (citing *Securiforce Int'l Am., LLC v. United* States, 879 F.3d 1354, 1360 (Fed. Cir. 2018); *MAC Elec., Inc.*, ASBCA No. 62503, 21-1 BCA ¶ 37,768). Because J&J could have submitted a monetary claim in a sum certain but did not do so, the contracting officer concluded that J&J's submission was not a valid claim (R4, tab 46 at 5182).

13. The final decision went on to address the merits of J&J's claim, stating that (a) "[s]ubcontractor markup for profit is not an allowable expense under the contract, where subcontractor is providing services and is not a merchant or supplier of relevant materials;" and (b) when invoicing for its material costs, J&J "must submit supply house invoices or other appropriate documentation as approved by the contracting officer" (R4, tab 46 at 5185). The final decision concluded with information about J&J's rights to appeal the decision (*id.*).

14. On August 24, 2021, J&J filed an appeal with the Board and subsequently filed a complaint. The complaint's prayer for relief requested that the Board (a) award J&J monetary damages of $5,861.40; (b) declare that a subcontractor's reasonable

4

markup is allowable under the task orders; and (c) declare that J&J is not required to submit supply house invoices for materials used by its subcontractors (compl. at 12).

15. At the time J&J filed its appeal with the Board, performance of the task orders was ongoing (R4, tabs 39-41) (exercising first option year for all three task orders and extending contract period of performance to June 30, 2022). The complaint states that "J&J has delayed submission of invoices in the amount of $89,449.01, with the understanding that [the] contracting officer would deny $5,861.40 of those invoices under the agency's interpretation of the contract terms as stated in the [contracting officer's final decision]" (compl. ¶ 7).

## DECISION

J&J, as the proponent of the Board's jurisdiction, bears the burden of establishing jurisdiction by a preponderance of the evidence. *Najmaa Alshimal*, ASBCA No. 62701, 21-1 BCA ¶ 37,872 at 183,899; *see also K-Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1004 (Fed. Cir. 2015). "The facts supporting jurisdiction are subject to our fact-finding upon a review of the record." *CCIE & Co.*, ASBCA Nos. 58355, 59008, 14-1 BCA ¶ 35,700 at 174,816. We determine our jurisdiction based on the facts at the time the appeal was filed with the Board. *Greenland Contractors I/S*, ASBCA No. 61113, 19-1 BCA ¶ 37,259 at 181,332 (citing *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993)).

The Board's jurisdiction is governed by the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-09. Pursuant to the CDA, a valid claim and a contracting officer's decision are prerequisites to our jurisdiction. 41 U.S.C. § 7103(a)(1); *Securiforce*, 879 F.3d at 1359; *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010). "[W]here there is no claim, there can be no effective decision from which to appeal." *Sweet Star Logistic Serv.*, ASBCA No. 62082, 20-1 BCA ¶ 37,704 at 183,045 (quoting *Mawaraa AlBihar Co.*, ASBCA No. 58585, 13 BCA ¶ 35,426 at 173,783).

The CDA does not define the term "claim." Rather, we look to the Federal Acquisition Regulation (FAR), which defines a claim as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." FAR 2.101; *Sweet Star Logistic Serv.*, 20-1 BCA ¶ 37,704 at 183,045. Under this definition, a "sum certain" is required for claims that seek the payment of money, but is not required for nonmonetary claims, such as those seeking "the adjustment or interpretation of contract terms" or other contractual relief.

5

**A. We Lack Jurisdiction Over the Request for Monetary Relief Asserted for the First Time in J&J's Complaint to the Board**

J&J's complaint seeks both monetary and nonmonetary relief. Its claim to the contracting officer, however, did not seek any monetary relief. Indeed, J&J expressly stated in the claim that it was not requesting money and was reserving its right to submit a later claim for an equitable adjustment to the contract (R4, tab 30 at 5073). Because the monetary claim asserted in the complaint seeks different relief than the claim submitted to the contracting officer, it is a separate claim that cannot be raised for the first time at the Board. *K-Con Bldg. Sys.*, 778 F.3d at 1005 (requests are "separate claims if they *either* request different remedies (whether monetary or non-monetary) *or* assert grounds that are materially different from each other factually or legally") (emphasis in original); *ECC Int'l Constructors, LLC*, ASBCA No. 59586, 21-1 BCA ¶ 37,862 at 183,855 ("Claims seeking different types of remedy, such as expectation damages versus consequential damages, are different claims."). Even if the claim submitted to the contracting officer could be read as seeking a monetary remedy, it failed to demand a sum certain. For monetary claims, the absence of a sum certain is "fatal to jurisdiction under the CDA." *Securiforce*, 879 F.3d at 1359-60 (quoting *Northrop Grumman Computing Sys., Inc. v. United States*, 709 F.3d 1107, 1112 (Fed. Cir. 2013)). Accordingly, we lack jurisdiction over J&J's claim for $5,861.40 or any other monetary relief.

**B. We Have Jurisdiction Over J&J's Claims for Nonmonetary Relief**

Whether we have jurisdiction over J&J's claims seeking declaratory rulings interpreting the disputed contract provisions depends on whether these claims are monetary claims masquerading as nonmonetary claims. If the "only significant consequence" of J&J prevailing on these claims is that J&J would be entitled to recover money from the government, then they are effectively monetary claims. *Securiforce*, 879 F.3d at 1360.

It is well-established that the Board has jurisdiction to decide nonmonetary claims and issue declaratory relief interpreting disputed contract provisions. *Garrett v. Gen. Elec. Co.*, 987 F.2d 747, 749 (Fed. Cir. 1993). Our reviewing court has established that "nonmonetary claims are not outside the jurisdiction of the Court of Federal Claims simply because the contractor could convert the claims to monetary claims by doing the requested work and seeking compensation afterwards." *Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1270 (Fed. Cir. 1999), *reh'g denied*, 186 F.3d 1379 (Fed. Cir. 1999).[2] The court rejected the government's argument that "nonmonetary disputes"

---

[2] In *General Electric*, the Federal Circuit recognized Congress' intent that there be jurisdictional parity between the boards and the Court of Federal Claims. *Id.* at 750. The *Alliant* decision is therefore instructive as to our jurisdiction even

6

should be read narrowly to exclude "disputes arising prior to the completion of work on a contract" and "disputes that have not [yet] ripened into a monetary dispute, but ... could" if the contractor "could convert the claim into one for monetary relief" by its own actions. *Alliant*, 178 F.3d at 1268 (internal quotation marks omitted).

*Alliant* also addressed the contention that jurisdiction over nonmonetary disputes can be denied based on "prudential" reasons. *Id.* at 1270-72. It explained that "Congress has granted relatively free access to the boards of contract appeals and the Court of Federal Claims . . . ." *Id.* at 1270. With respect to the boards, it noted that the CDA authorizes review of "any appeal [from a contracting officer's decision on a claim] relative to a contract made by [an] agency." *Id.* at 1270-71 (quoting 41 U.S.C. § 607(d)). The court of appeals went on to say that "[t]he FAR has likewise ensured that review of contract claims will be relatively easy to obtain, by defining the term 'claim' broadly, to include a demand or assertion seeking, as a matter of right, *inter alia*, 'the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.'" *Id.* at 1271 (citing 48 C.F.R. § 33.201). It thus rejected the notion that "all but a narrow class of actions on nonmonetary claims" should be dismissed. *Id.*

Against this backdrop, the Federal Circuit held that a contractor cannot evade the sum certain requirement by casting a monetary claim as a nonmonetary one. *Securiforce*, 879 F.3d at 1360. The court did not disturb the holdings in *General Electric* and *Alliant*, but rather cited both of them approvingly. *Id.* at 1361-62. *Securiforce* held that, if the "only significant consequence" of a purported nonmonetary claim is that the contractor would obtain money damages from the government, the claim is a monetary one. *Id.* at 1360. To be a legitimate nonmonetary claim, the requested relief must have a significant consequence other than the recovery of money. *Id.* "While contractors may in some circumstances properly seek only declaratory relief [for a nonmonetary claim] without stating a sum certain, they may not circumvent the general rule requiring a sum certain by reframing monetary claims as nonmonetary." *Id.*

*Securiforce* involved a contract that had been terminated, in part for default and in part for convenience. *Id.* at 1358. The contractor contested both termination decisions in the Court of Federal Claims. *Id.* at 1358-59. The government contended that the court lacked jurisdiction over the termination for convenience claim because the claim to the contracting officer did not request monetary relief in a sum certain. *Id.* at 1360. The

---

though it addressed an appeal from the Court of Federal Claims. *See, e.g.*, *Kaman Precision Products*, 10-2 BCA ¶ 34,529 at 170,287 (citing *Alliant* in holding that "[t]he fact that a decision on [a claim for contract interpretation] may later result in a monetary claim does not affect our jurisdiction to hear the appeal before us nor does it lead us to conclude that it would be premature to decide [the claim for contract interpretation] at this time.").

contractor contended that its claim was a nonmonetary one seeking only a ruling that the termination for convenience was improper. *Id.* The court of appeals disagreed, holding that the claim was in essence a monetary one because "the only significant consequence" of finding the termination for convenience to be improper was that the contractor would be entitled to money damages. *Id.* at 1360-61. The contract having been terminated, there could be no other significant consequence of overturning the termination for convenience. Therefore, the failure to include a sum certain in the claim to the contracting officer rendered the claim invalid. *Id.*

Here, unlike in *Securiforce,* performance of the task orders was ongoing when the claim was submitted and when J&J filed this appeal. J&J asserts that the Board's resolution of the contract interpretation disputes will affect how it performs the task orders going forward:

> [T]he parties are in the middle of the total contract period of performance. . . . Resolution of the dispute about the allowability of subcontractor markup on materials will result in a change in contract performance. If the Board decides that the markup is allowable, then both J&J and the Government will no longer engage in the "workaround" practice. In contrast, if the Board decides that the subcontractor markup is not allowable, then J&J will likely seek to significantly reduce the amount of repair work performed by subcontractors, as J&J will only be assured of reimbursement for its own materials costs. Or instead, J&J could consider attempting to source all of the materials used in the repairs itself and subcontracting only the repair services, which would result in an increase in overhead hours on the Task Orders.

(App. br. at 9-10) In short, J&J contends that the Board's determination of the contract interpretation issues presented in this appeal could cause J&J to change its approach to using subcontractors to perform work, such as by self-performing more of the work or purchasing materials directly that it would otherwise obtain through its subcontractors. These changes in performance would appear to permit J&J to avoid costs (the subcontractor markups on materials) that would go unreimbursed under DeCA's interpretation. In addition, if J&J's interpretation prevails, it will be able to avoid performing the task of obtaining and submitting supply house invoices, which the government is requiring over J&J's objections.

The government does not dispute J&J's description of the potential consequences of a ruling in its favor on the contract interpretation dispute, but nonetheless contends that we still lack jurisdiction under *Securiforce*. The government begins by arguing that there

8

is no requirement that "the *sole* consequence or impact of a submission be monetary in order to trigger the jurisdictional requirement for a 'sum certain.'" (Gov't reply br. at 4) (emphasis in original) This cannot be squared with the clear language in *Securiforce*, which repeatedly states otherwise. *Securiforce*, 879 F.3d at 1360 (standard is whether "the only significant consequence" would be recovery of money damages and noting that the claim at issue "would—if granted—yield only one significant consequence [i.e., money damages]").

The government then argues that the changes in performance J&J says it may have to make depending on the outcome all have "significant – and arguably primary – monetary components" and that the "potential cost to Appellant . . . is the only significant factor in the purported claim and is easily ascertained or estimated" (gov't reply br. at 5-6). According to the government, J&J was therefore required to submit a monetary claim for a sum certain. This sweeps far too broadly. While it is undoubtedly true that resolution of the interpretation disputes would have financial consequences, the question *Securiforce* requires us to address is whether the only significant relief that J&J could obtain is money damages. The mere fact that the outcome of the dispute will ultimately affect the contractor's bottom line does not answer this question.

The government's position is essentially as stated in the contracting officer's final decision: "[i]f a significant result of [a] purported claim is payment of additional compensation to the Contractor, then the Contractor must state a 'sum certain' in connection with the claim" (R4, tab 46 at 5182) (citing *Securiforce*, 879 F.3d at 1360 and *MAC*, 21-1 BCA ¶ 37,768). That, however, misstates the law. *Securiforce* did not hold that any claim that may lead to payment of additional compensation is monetary, and thus must state a sum certain. To the contrary, it held that claims must be asserted as monetary claims when "the only significant consequence" of the claim would be money damages. *Securiforce*, 879 F.3d at 1360. The jurisdictional question, therefore, is not whether the claim may have a significant monetary impact, but whether it may have a significant nonmonetary impact.

The government's approach would dramatically curtail, if not completely nullify, contractors' ability to bring claims that seek only "the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." FAR 2.101. Almost every contract interpretation dispute ultimately has monetary consequences; parties rarely expend resources arguing about interpretation issues that have no financial impact. The government's interpretation of the law would restrict the Board's jurisdiction to declare the rights of the parties under a contract to those infrequent occasions when the outcome is financially meaningless. This would be contrary to the long-standing recognition that we have jurisdiction to hear contract dispute issues even in situations where the contractor could perform as the government directs and seek compensation afterwards. *Alliant*, 178 F.3d at 1270. It is also inconsistent with Congress' intent to grant "relatively free access to the boards of contract appeals" and the

FAR's scheme that "review of contract claims will be relatively easy to obtain." *Id.* at 1270-71.

Finally, the decisions the government relies upon are distinguishable. In each of the decisions it cites, there was no plausible assertion that the purported nonmonetary claim could result in changes to contract performance or the avoidance of costs, as opposed to purely monetary relief. In *MAC Electric, Inc.*, ASBCA No. 62503, 21-1 BCA ¶ 37,768, the purported nonmonetary claim seeking a declaration of the date a contract was substantially complete was a monetary claim because the "only 'significant consequence' of [such a determination] would be to permit [the contractor] to use that determination in a delay claim seeking monetary damages." *MAC*, 21-1 BCA ¶ 37,768 at 183,328. In *Duke University v. Department of Health and Human Services*, CBCA No. 5992, 18-1 BCA ¶ 37,023, the Civilian Board found that it lacked CDA jurisdiction because a "ruling in Duke's favor would not result in Duke avoiding costs, but instead would be used only to entitle Duke to monetary relief in a separate proceeding. In such circumstances, it is clear that Duke has an uncertified and unquantified monetary claim." *Duke*, 18-1 BCA ¶ 37,023 at 180,291. *See also Parsons Gov't Servs., Inc.*, ASBCA No. 62113, 20-1 BCA ¶ 37,586 at 182,511 ("Parsons will not be able to avoid performance of a contractual task by virtue of its claim for contractual interpretation."); *Greenland Contractors I/S*, ASBCA Nos. 61113, 61248, 19-1 BCA ¶ 37,259 at 181,332 ("[A] holding in Greenland's favor would not allow Greenland to avoid performing, but would only be used to entitle Greenland to monetary relief in a separate proceeding.").

Here, J&J plausibly contends that a ruling on the contract interpretation issues raised in its claim may allow it to avoid costs going forward and relieve it from an obligation to perform a task the government is insisting upon over J&J's objections. We find that these are "significant consequences" other than the recovery of money and therefore suffice to demonstrate that the claims are not barred by the *Securiforce* rule.

Our ruling is limited to finding that we have jurisdiction to hear J&J's claim for declaratory relief. We do not address here whether there are other reasons we should not issue a ruling interpreting the contract at this time. Even where we have jurisdiction, we are not "required to issue a declaration of rights whenever a contractor raises a question of contract interpretation during the course of contractor performance." *Alliant*, 178 F.3d at 1271. We are "free to consider the appropriateness of declaratory relief, including whether the claim involves a live dispute between the parties, whether a declaration will resolve that dispute, and whether the legal remedies available to the parties would be adequate to protect the parties' interests." *Id.* Those questions are not presently before us and we do not consider them here. We also do not express any view of the merits of the claim.

<u>CONCLUSION</u>

The government's motion to dismiss for lack of jurisdiction is GRANTED as to the claim asserted in appellant's complaint for monetary relief. The government's motion is otherwise denied.

Dated: May 15, 2023

THOMAS P. MCLISH
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I <u>concur</u>

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 63013, Appeal of J&J Maintenance, Inc., d/b/a J&J Worldwide Services, rendered in conformance with the Board's Charter.

Dated: May 16, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

11