ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Gulf Extreme Engineering & Construction | ) ASBCA No. 62592 |
| | ) |
| Under Contract No. W5J9JE-16-C-0003 | ) |

APPEARANCE FOR THE APPELLANT: Mr. Mir Sulaiman Amini
   Chief Executive Officer

APPEARANCES FOR THE GOVERNMENT: Michael P. Goodman, Esq.
   Engineer Chief Trial Attorney
  Rebecca L. Bockmann, Esq.
  Kathryn G. Morris, Esq.
   Engineer Trial Attorneys
   U.S. Army Engineer District, Middle East
   Winchester, VA

OPINION BY ADMINISTRATIVE JUDGE SMITH

Appellant Gulf Extreme Engineering & Construction (GEEC or appellant) challenges Respondent U.S. Army Corps of Engineers' (the government's) default termination of GEEC's construction contract for failure to diligently prosecute the work. GEEC contends that the government's suspension of one of the contract's line items (CLINs) during the project, along with COVID and other government actions, impeded GEEC's performance and excused its considerable project delay. But GEEC's arguments are unsupported or unavailing and they fail to rebut the government's demonstrated justification for termination. The appeal is denied.

FINDINGS OF FACT

GEEC was awarded a $7,985,000 design-build contract on April 6, 2016 (R4, tab 6 at 2). The contract was grouped into eight CLINs for design and construction of electric power transmission infrastructure in Baghlan province, Afghanistan (R4, tab 6 at 3-6). CLINs 3, 4, and 5 were geographically discrete work elements that could be performed independently (R4, tab 6 at 3-6, 52-53, tab 14). The government issued notice to proceed on June 10, 2016, establishing a completion date 707-days later on May 19, 2018 (R4, tab 13). During performance, a total of five modifications were issued, two of which bilaterally expanded the period of performance to 1,386 days with a revised project completion date of March 28, 2020 (R4, tabs 7-11).

Although the solicitation and contract included a preliminary conceptual route for the electric transmission lines, the actual route was to be determined by GEEC during the design phase and based upon then-existing conditions, coordination with Afghan utilities, available rights of way, and the contractor's own design, cost, and construction decisions (R4, tab 6 at 57, 110-11, 355, tab 7 at 2). The contract expressly required GEEC to ". . . investigate other routes for optimization and cost savings . . . ." (*compare* R4, tab 12 at 3, *with* R4, tab 6 at 53-54, 57). On July 2, 2016, GEEC's RFI 1 proposed a route that differed from the conceptual route, calling it a "change request" without cost or schedule impact (R4, tab 139). Even though it was not a change to GEEC's obligation to propose a route, the government accepted GEEC's proposal and reiterated the contract requirement that GEEC was responsible for rights-of-way and coordination with the Afghan government, which needed to be finalized in the 35% design submittal (R4, tab 16, tabs 139-140 at 1).

GEEC's design submittals were all late (R4, tab 14 at 3 (activity ID Srvy-15)- 4 (activity IDs Dsgn-11, Dsgn-15, Dsgn-19, & Dsgn-23); tab 20 at 2-3, tab 33 at 1, tab 156 at 1). For example, GEEC's 99% design was 333 days later than its original schedule, and 200 days later than its May 2017 schedule update (R4, tab 156 at 1). It was also based upon the preliminary route in the contract, not the approved route chosen by GEEC and discussed above (*compare* R4, tab 153 at 5, *with* R4, tab 6 at 355).

By May 22, 2017, GEEC was 345-days into the 707-day period of performance yet had earned just 25% of the contract value (R4, tab 115 at 1). Nine months after that, in February 2018—626 days into the now-modified 776-day performance period—GEEC had completed just 51% of the work (R4, tab 124 at 1). This left five months to complete the other half of the project and GEEC had achieved, at most, 3.5% progress per month (*id.*). So, by the end of February 2018, GEEC's rate of progress suggested at a minimum 14 more months of work. Timely performance was essentially impossible.

On April 23, 2018, the government requested a realistic recovery schedule to complete on time (R4, tab 43). The government said that "[i]f you claim uncontrollable delays please provide the reasons and backup documents" (*id.*). GEEC did not respond with a realistic recovery plan or justification for delays. In fact, GEEC did not respond at all. On June 2, 2018, the government asked again (R4, tab 45). GEEC responded with a June 5, 2018, RFI 9 that largely repeated RFI 1, which had been approved by the government over two years earlier (R4, tab 147). Unlike RFI 1, however, RFI 9 now sought a schedule extension and undefined additional compensation (*id.*).

GEEC attributed its slow progress to a "stop work order by Baghlan municipality" that would be "resolved as soon as possible" (R4, tab 46 at 2), but again

did not provide a recovery schedule. Instead, GEEC's June 30, 2018, schedule update projected late completion by over 14 months and sought a price increase to CLIN 3 from $3.2 million to over $7 million (R4, tab 6 at 4, tab 149 at 5). But the record reflects that some of GEEC's delay was caused by its failure to coordinate its proposed route with the Afghan authorities, which was a clear contract requirement (R4, tab 137 at 1498 (under "Quality Assurance Narrative(s)"), tab 6 at 78 (¶ 3.1.6)).

Despite its earlier delays, GEEC made progress in the latter half of 2018, including on CLINs 4 (70.3%) and 5 (88%), although much of the increased percentages were due to invoicing high-cost materials as opposed to performance of actual construction work (R4, tab 132 at 2).

When the Army vacated Camp Kelaghai in early 2019, the government suspended work on CLINs 3 and 5 (72% of the remaining work) and sought a credit proposal for deleting them from the contract (R4, tabs 55-56, 152-153 at 2). Rather than a credit for CLINs 3 and 5, GEEC sought an overall *increase* of $1.7 million and a 609-day time extension, citing "major factors that ha[ve] affected the project progress and caused delays in project works" (R4, tab 62 at 1, tab 63 at 140). Despite its off-task proposal, the government granted GEEC's entire time-extension request, setting a new completion date of March 28, 2020 (R4, tab 159 at 4, 6). The government directed GEEC to continue work on CLIN 4, including the procurement of long lead items, while the disposition of CLINs 3 and 5 was determined (R4, tab 73).

The government lifted the suspension of CLIN 5 on September 2, 2019, and the parties formalized the extension of the completion date to March 28, 2020, with bilateral Modification No. P00001 (R4, tab 11). Modification No. P00001 did not change the price of the contract (*id.*). As GEEC later acknowledged, Modification No. P00001 "compensate[d GEEC for] unforeseen delays beyond GEEC's control" including "expenses due to work stoppage" (R4, tab 92 at 3). GEEC's subsequent schedule updates reflected completion of CLINs 4 and 5 within the newly revised March 28, 2020, performance period (R4, tab 70 at 85-87).

Despite these agreed-upon changes, GEEC did not promptly resume work on CLINs 4 and 5 which drew letters of concern from the government on October 24, November 6, December 17, and December 24, 2019 (R4, tabs 73, 76, 82-83). It was not until December 29, 2019, that GEEC revealed that it had intended all along to "complet[e] all contract CLINs simultaneously and concurrently for successful execution and completion of the project" (R4, tab 84 at 2).

Meanwhile, the government split CLIN 3 into two parts (which for ease of reference we call CLIN 3.1 and CLIN 3.2) with CLIN 3.1 remaining suspended (R4, tabs 78-79). GEEC was directed to resume work on CLIN 3.2 (*id.*). On January 7, 2020, GEEC submitted a schedule that showed it resuming work on CLIN 3.2 and

3

completing it by August 22, 2020 (R4, tab 161 at 168 ("Schedule Narrative")). But GEEC also indicated that procurement of long-lead items needed for work on CLINs 3.1, 3.2, 4, and 5 was only 5% complete at the time and would not proceed further until the government reinstated CLIN 3.1 (*id.*). This extracontractual condition that GEEC placed on its continued work and completion within its revised schedule would ultimately lead to GEEC's termination.

On January 18, 2020, the government objected to GEEC's failure to sufficiently work on CLINs 4 and 5 pending the resolution of CLIN 3.1 (R4, tab 86 at 2). On January 27, 2020, GEEC once again contradicted its own schedule by saying that "GEEC's plan is to start shipment process once all the Long Lead Items for CLINs 0003-0005 are manufactured. In an event that a delay occurs and is beyond our control, it affects the overall shipment plan [for all long lead items]" (R4, tab 87 at 2). In essence, by February 2020, GEEC was knowingly delaying overall progress by insisting that the suspension of CLIN 3.1 be lifted prior to ordering the necessary items to work on CLINs 3.2, 4, and 5 – many of which were "long lead" (*id.* at 4; tab 89 at 1, 3). Rather than acknowledge that its slow progress was largely due to GEEC's own decisions, and that modification 1 had resolved previous government delays, GEEC claimed that it had expended "maximum effort" on the contract (R4, tab 87 at 3). GEEC attributed the project delay, without support or detail, to "unforeseen conditions beyond our control, security condition, community challenges, [right-of-way] issues, several design submissions delays, and the government[']s numerous decisions regarding the suspension, descope and descope lift" (*id.*).

Unconvinced, the government issued a cure notice on March 7, 2020, that cited GEEC's overall lack of progress, and apparent lack of effort, to complete on time (R4, tab 96). Specifically, since the suspensions were lifted, GEEC had completed between 0% and 3% on CLINs 3.2, 4, and 5 (*id.* at 1). The government reiterated that GEEC's total percentage of work used for its invoices did not reflect actual progress on in-place construction, which was much lower (*id.*). The cure notice required GEEC to submit a cure plan including a realistic recovery schedule by March 17, 2020, or face termination (*id.* at 6-7).

Rather than submit a recovery plan and schedule in response to the cure notice, on March 7, 2020, GEEC suggested yet another extension of the completion date to August 22, 2020 (R4, tab 94 at 2). GEEC claimed that it could get the long lead items and "complete all the CLINs associated with the contract together" (*id.*). But rather than more specifically address the cure notice, or diligently prosecute the work, GEEC discontinued all field work on March 12, 2020 (R4, tab 138 at 3918-53). On March 15, 2020, GEEC once again cited "delays beyond our control," future REAs, and a purported need to lift the suspension of CLIN 3.1 in order to finish CLINs 3.2, 4, and 5 (R4, tab 99 at 1-2). In further correspondence, the government reminded GEEC that each CLIN was independent and the suspension of CLIN 3.1 should not delay

4

work on CLINs 3.2, 4, and 5 (R4, tabs 103-05).  GEEC responded that it was slowing down the work and would stop work entirely due to COVID-19 (COVID) (R4, tab 101).

COVID was indeed a new complication in March 2020, but the record shows that GEEC had slowed down before COVID with its onsite workforce dwindling steadily between October 2019 (average 38 workers onsite) to 15 workers in February, to zero by March 2020 (R4, tab 2 at 10, tab 138 at 3462-3951).  Also, while COVID undoubtedly justified certain workplace precautions, most aimed at indoor activities, there were never any applicable U.S. or Afghan government rules that prohibited outdoor construction work.  GEEC later asserted that "[a]dditional unanticipated social distancing, quarantine, health-safety and cleaning requirements caused Appellant to reduce its workforce to adhere to the local guidance and protect its workforce so it would be ready to resume work once restrictions lifted" (R4, tab 165 at 12-13 (response to interrogatory 19)).  But those assertions are unsupported by any "local guidance" or COVID restrictions that justified GEEC slowing down, then stopping work altogether.

Faced with GEEC's habitual lack of progress, unsupported blame shifting, insufficient response to the cure notice, and cessation of onsite activity, the government terminated GEEC's contract on April 1, 2020, for failure to diligently prosecute the work (R4, tab 2).  The termination letter comprehensively described GEEC's failures, summarized above, and set forth the government's consideration of the termination factors required by FAR 49.402-3(f) (*id.*; R4, tab 107).  Overall, the government determined that GEEC unreasonably delayed most aspects of the project during the first half of performance, used unsupported excuses to justify its delays, refused to continue work on CLINS 3.2, 4, and 5 while CLIN 3.1 was suspended, and unjustifiably abandoned the work site (R4, tab 2).  Because the contract required GEEC to determine the layout of the transmission lines and to coordinate its route with Afghan authorities, GEEC's delays in those tasks were not beyond GEEC's control (*id.*).  The government's generous time extensions more than made up for any impact of the temporary suspensions of CLINs 3.2, 4, and 5 (*id.*).  And, while COVID was an unexpected complication, it did not justify GEEC abandoning the work site, especially when GEEC refused to return until the suspension of CLIN 3.1 was lifted – an event that has nothing to do with the non-existent COVID "restrictions" on outdoor construction work (*id.*).

Per FAR 49.402-3, the government also addressed the termination factors not related directly to GEEC's default, including the availability of other sources (ample), urgency of the government's need (more likely satisfied by a reprocurement than GEEC), effect of termination on other contracts (none), effect on loans or advance payments (inapplicable), and other pertinent circumstances (none relevant) (R4, tab 107).  GEEC does not challenge those tangential determinations here.

DECISION

"[A] default-termination is a drastic sanction . . . which should be imposed (or sustained) only for good grounds and on solid evidence." *J.D. Hedin Constr. Co. v. United States*, 187 Ct. Cl. 45, 57, 408 F.2d 424, 431 (1969). A termination for default is a government claim. *Securiforce Int'l America, LLC v. United States*, 879 F.3d 1354, 1363 (Fed. Cir. 2018). And "[t]he government bears the burden of proof in establishing the validity of a default termination." *Johnson Mgmt. Grp. CFC, Inc. v. Martinez*, 308 F.3d 1245, 1249 (Fed. Cir. 2002).

Where the government satisfies its burden of establishing the validity of the default termination, the contractor then has the burden of establishing that the default was excusable. *Highland Al Hujaz Co., LTD*, ASBCA No. 58243, 16-1 BCA ¶ 36,336 at 177,164, *aff'd*, 696 F. App'x 509 (Fed. Cir. 2017) (per curiam). The contractor meets its burden if it can demonstrate that "the government materially breached the contract thereby discharging appellant's duty to perform," that its failure to perform was well beyond its "control and without its fault or negligence or that of its subcontractors or suppliers," or that the contracting officer's "default decision was arbitrary or capricious or an abuse of discretion." *Id.* (citations omitted).

FAR 52.249-8(a)(1)(ii) grants the government the right to terminate a contract for default if the contractor fails to make progress so as to endanger performance of the contract. That right "may be exercised if the Contractor does not cure such failure within 10 days (or more if authorized in writing by the Contracting Officer) after receipt of the notice from the Contracting Officer specifying the failure." FAR 52.249-8(a)(2).

Here, the government terminated the contract after it duly issued a cure notice and considered GEEC's unsatisfactory response (R4 tabs 2, 96). The government has amply shown that the record supports the termination decision. Thus, the burden shifts to GEEC, and it has not, during the project or here, shown that its many delays, scheduling errors, poor management decisions, or work slowdowns and stoppage, were beyond its control. In fact, GEEC's challenge to the termination is almost entirely unsupported and consists only of repetitive and conclusory characterizations of select correspondence between the parties, without citations to any substantive record evidence.[*]

---

[*] Although some of the correspondence relied upon by GEEC are identifiable by date or context, GEEC's two Rule 11 briefs do not contain any citations to the Rule 4 record at all. GEEC's reply brief does not even mention, much less cite, any specific documents or evidentiary support.

When, as here, a contractor asserts government-caused delay to its performance, whether as a claim or as a defense to a termination, the contractor is required to present evidence to support its position – often in the form of schedule submissions, delay analyses, daily reports, and other contemporaneous evidence. *Wilner v. United States*, 24 F.3d 1397, 1401-02 (Fed. Cir. 1994); *Columbia State Bank*, ASBCA No. 59531, 16-1 BCA ¶ 36,399 at 177,456; *see also Sauer Inc. v. Danzig*, 224 F.3d 1340, 1345 (Fed. Cir. 2000) (burden on contractor to justify delay). GEEC offers none of the required proof to support its arguments.

Instead, GEEC contends that the government is responsible for ". . . delays, suspensions of work and partial lifts of suspensions because it appeared that [the government] was unwilling or unable to decide how to proceed" and the government "amended the contract due to differing site conditions" (app. br. at 4-5). If substantiated, these might be colorable challenges to a termination under FAR 52.249-10. But GEEC has not cited any evidence to support those arguments, and we find none in the record ourselves. For example, while the government did indeed suspend, then lift, work on three of the CLINs as described above, the government has persuasively shown that the suspensions were unrelated to GEEC's performance delays. Regarding the alleged "differing site conditions," there was one change that was labelled as a differing site condition and resolved in 2017 (R4, tab 8). It was a $130,016 relocation of several existing structures that was bilaterally agreed to have caused no delay whatsoever, and GEEC released the government from any further claims related to that change (*id.* at 2-3).

GEEC's COVID argument is that in March 2020 "the Afghan government announced a series of restrictions and lockdowns on travel and a reduction of all non-essential services" (app. br. at 12) that "affect[ed] contract performance and the safety of [GEEC's] management, labor and security [personnel]" (app. br. at 14). While COVID was indeed a global event that caused many changes in daily life, GEEC fails to identify any specific restrictions that prevented it from performing on-site work, and no "guidance released by the Afghan government" (*id.* at 12) that contradicts the government's assertion that there were no *bona fide* COVID impediments that forced GEEC to stop work entirely in March 2020. GEEC's COVID argument also ignores the plain fact that the threat of COVID was not present prior to early 2020, during the vast majority of the project when GEEC was obstructing its own performance.

GEEC's claim that the government interfered with GEEC's performance and breached its duty to cooperate similarly fails. Once again relying on ill-supported allegations instead of record evidence, GEEC's position that the government "engaged in a pattern of either suspending work under various CLINs, lifting suspensions, directing Appellant to submit proposals and additional documentation, and not

7

allowing Appellant to continue with work under all CLINs" (app br. at 17) is unavailing. In fact, the objective evidence supports the government's termination decision more than GEEC's challenge. The government indeed did not lift the suspension of CLIN 3.1 to "allow [GEEC] to continue with work under all CLINs" (*id.*). But that is exactly the government's point. GEEC was contractually *required* to continue to diligently work on CLINs 3.2, 4, and 5 regardless of the suspension of CLIN 3.1 (R4, tab 6 at 9-10) – yet GEEC refused to do so.

GEEC's legal arguments, such that they are, simply rephrase the same unpersuasive positions again and again, for example that "[r]espondent[] . . . refus[ed] to permit Appellant to begin installing all long lead items at the same time" (app br. at 17), and "[a]ppellant is planning to deliver and install all the long lead items at once to avoid these risks and damage to the long lead items" (app. reply br. at 4). GEEC does not even acknowledge, much less effectively address, the clear contractual requirement to continue to diligently prosecute work where there is a partial suspension.

GEEC's claim of "interference with contract performance" fares no better, again a general or literal repeat of the same arguments. Arguing once again that "[r]espondent-led work suspensions, cancellation, and delays in lifting suspension substantially interfered with Appellant's performance," GEEC does not refute the government's termination any more than GEEC's meritless breach of contract argument. (App. br. at 18)

Finally, GEEC's critique of the government's termination letter (app. br. at 19-22) fails for the same reason. GEEC blames "delays caused by local authorities" (*id.* at 20) when GEEC was clearly responsible for working with local authorities (R4, tab 6 at 58, tab 7 at 2). GEEC again relies upon unidentified COVID restrictions as an excuse for its own decision to cease work. GEEC's assertion that "[r]espondent refused to provide any additional extensions and it effectively accelerated the performance of the contract" (app. br. at 20) is simply not supported by the record.

## CONCLUSION

The government has sufficiently supported its decision to terminate GEEC's contract. Appellant's appeal is denied.

Dated: October 30, 2023

BRIAN S. SMITH
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

OWEN C. WILSON
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 62592, Appeal of Gulf Extreme Engineering & Construction, rendered in conformance with the Board's Charter.

Dated: October 30, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals